## HENRY H. COOPER AND HENRY R. JUDSON v. KORNELIUS MULDER.

*Principal and agent—Ratification—Estoppel—Charge to jury.*

1. Where there is testimony tending to support the theory upon which a party has tried his case, it is error to refuse to instruct

the jury upon such theory, unless the instruction asked for is covered by the general charge.

2. One cannot be permitted to sit by and see another constantly using his name in the purchase of goods, receive the invoices showing such purchase, give orders for the goods to be taken from the depot and express-office, see the other dealing them off as his own, and then, when called upon for payment by one who has been acting in good faith, repudiate the whole transaction, and deny the agency. Such silence is a ratification of the act of the other, though no authority, express or implied, for the purchase was originally given.

Error to Newaygo. (Palmer, J.) Argued February 8, 1889. Decided April 12, 1889.

*Assumpsit.* Plaintiffs bring error. Reversed. The facts are stated in the opinion.

*Drury & Wolcott,* for appellants.

*W. D. Fuller,* for defendant.

LONG, J. This is an action of *assumpsit.* On the trial in the circuit court verdict and judgment passed for the defendant. Plaintiffs bring error. On the trial it appeared that plaintiffs were copartners, doing business under the firm name of H. H. Cooper & Co., at Utica, N. Y. During the whole of the year 1887 one T. Traver was their traveling salesman in Michigan. On August 15, 1887, plaintiffs received from Traver two orders for goods to be shipped to defendant at Fremont, Newaygo county, this State, the first, amounting to $137.50, to be dated November 1, 1887, and sold on four months' time, and the second, amounting to $522.25, to be dated October 1, 1887, and sold on four months' time. November 1, 1887, plaintiffs received another order from Traver for goods to be shipped to the defendant, amounting to $203, and sold on four months' time from December 1, 1887. The goods named in the first two orders were shipped by freight, in

one box, weighing 600 pounds, and the goods of the last order shipped in one box, by freight, weighing 150 pounds, and both boxes marked "K. Mulder, Fremont, Mich." In addition to, and as a part of, the first two orders sent by Traver, goods to the amount of $33 were shipped by plaintiffs, August 27, 1887, by the American Express Company, marked "K. Mulder, Fremont, Mich." Another order was received by plaintiffs from Traver, on September 29, 1887, for goods to be shipped to defendant, amounting to $22, and on that date were shipped by the American Express Company, marked "K. Mulder,. Fremont, Mich." At divers other times between August 3 and December 3, 1887, plaintiffs received several written orders purporting to come from defendant, all signed, "K. Mulder, per F." for goods, amounting in all to $49, and all such goods were shipped by the American Express Company to defendant. The total value of all these goods amounted to $966.75, and no part of it has been paid.

It appears that at the time of the shipment of these goods by freight and by express invoices were made and placed in envelopes, postage prepaid, and addressed and sent to "K. Mulder, Fremont, Mich." It further appears that between February 11 and April 29, 1887, plaintiffs had shipped goods to defendant in the same way upon the order of Traver, and letters purporting to come from K. Mulder, signed "K. Mulder, per F.," and for these goods plaintiffs had been paid in full. In one of the last-named orders was the direction to ship the goods therein named marked "K. Mulder, care M. B. Franklin, Fremont, Mich."

Mr. Judson, one of the plaintiffs, whose testimony was taken by commission, testifies that plaintiffs did not know, and never had known or seen, any man by the name of Franklin or M. B. Franklin, and never had any business

dealing with such a man; that plaintiffs, immediately
upon the receipt of the first order, looked up the financial
standing of defendant in Dun's Commercial Agency, and
found him quoted as being a man of means and financial
responsibility, and plaintiffs shipped the goods, relying
upon the information so received; that plaintiffs never
knew of any one claiming any interest in the business at
Fremont, Mich., or in the goods so shipped to defendant,
except the defendant; and that all goods shipped as afore-
said were so shipped and delivered, relying upon the
financial responsibility of the defendant and no one else;
and that plaintiffs had never received any letter, corres-
pondence, or order for goods from any person named
Franklin residing or doing business at Fremont. It
appears, however, that plaintiffs had had no dealings with
defendant personally.

M. B. Franklin was called by plaintiffs, and testified
substantially that he resided at Fremont, and had been
in business there since 1877 to March 1, 1888, when he
sold out to the defendant. His business was dry goods,
clothing, boots and shoes. He married the step-daughter
of defendant, and defendant had given him financial aid,
and owned the building in which he carried on business.
In November, 1885, Franklin gave a chattel mortgage on
his stock of goods, in the amount of about $9,000, to
Root, Strong & Co., of Detroit, and a second chattel
mortgage of about $11,000, to defendant, Mulder. Wit-
ness Franklin was then asked by plaintiffs' counsel:

" Q. Have you within the last two years acted as the
agent of the defendant in this case?

" A. Yes, sir.

" Q. When did you first begin to act?

" A. December, 1885.

" Q. Will you state the circumstances under which you
came to act?

" A. I could not buy them any more in my own name.
I could not sort up the stock any more in my own name,

and I had to ask Mr. Mulder's permission to buy goods to sort up the stock.

"*Q.* Now state the circumstances under which you went to Mr. Mulder.

"*A.* I wanted some shoes, and I went to him and told him that I could not buy goods, and that I would have to sort the stock at different times, and I would have to buy them in his name; and he acquiesced. He said be careful, and not buy too much. This was along in December, 1885."

The witness further testified that from that time on until he turned the goods over to the defendant he bought, in the name of the defendant, clothing, boots, shoes, woolen and rubber goods, and that all goods so bought came marked "K. Mulder," and that the statement of account presented by plaintiffs is a correct statement. Witness further testified that during the years 1886 and 1887 he saw defendant several times—two, three, or four times a month—about business connected with the store, and was told by him to be careful and not buy too many goods; that he wanted him to let him sell out the stock, but he said it would not do, as it would lose trade, and leave a large remnant on hand; that from time to time defendant contributed means to the business; that he was given checks and drafts on the bank by defendant, using portions of them in paying debts; that defendant knew he was buying goods all the time; that in December, 1886, the United States marshal made an attachment on the stock of goods in the store, and while the marshal was in possession defendant came to the clerk in the store and asked for a bill of all the goods bought in his (defendant's) name; that he took the bills to an attorney's office to have the goods represented by these bills replevied, and that the bills then amounted to over $2,000. The goods purchased from the plaintiffs were shipped to "K. Mulder," and the invoices came in his (defendant's) name, and he was never forbidden to

purchase goods in defendant's name. These invoices were brought to him sometimes by the wife of defendant, at times by a boy, and at other times by the defendant himself.

It is admitted that the goods for which the claim is made were marked "K. Mulder, Fremont," and sent from Utica, N. Y.; that they were taken and receipted for in defendant's name, by defendant's draymen, and that defendant's draymen had written authority from the defendant to receive and receipt for in defendant's name all goods consigned to him at Fremont station, and that the railroad company had written authority from the defendant to deliver to said draymen all such goods. Mr. Rutherford, a clerk in the Franklin store, also gave evidence that these goods were so purchased, and that Mulder at times brought the invoices to the store himself. Mr. Edison, a drayman, testified that he took goods from the depot, marked "K. Mulder," to the store of Franklin; that upon one occasion some goods came to the station marked to "K. Mulder;" that Franklin wanted the goods brought up, and he saw Mulder about it, told him what the goods were, when Mulder gave him an order to get the goods, and he did so, and delivered them to Franklin.

Upon the close of the testimony on the part of the plaintiffs, Mr. Mulder was called as a witness in his own behalf, and testified that the story of Franklin was wholly false; that he had no authority to buy goods in his name; that he did not know of any invoices being sent in that way. The testimony of the defendant is a denial of the whole transaction so far as related by Franklin and his authority to purchase goods in the name of the defendant, and that all he had to do with the business of Franklin was in loaning him money from time to time to assist him in his business; that he took the chattel mortgage

after the mortgage of Root, Strong & Co., and afterwards Franklin turned the stock over to him. No other witness was called by defendant. Upon the issue so made the case was submitted to the jury, who found a verdict for defendant.

Twenty-six errors are assigned. Sixteen are based upon the charge of the court as given, and ten upon the refusal of the court to give plaintiffs' requests to charge to the jury. The good faith of the plaintiffs in the entire transaction is not questioned, and the receipt of the goods at the depot, marked "K. Mulder," and their being taken from the depot by the draymen authorized to take them by Mulder, is not disputed, and it is not claimed that the defendant ever repudiated Franklin's acts as his agent, though the defendant testifies, in a general way, that he had no knowledge that Franklin was purchasing goods in his name. It is a somewhat remarkable state of affairs, if the testimony of Franklin, his clerk, and the draymen is true, and the other circumstances surrounding the case, as claimed by plaintiffs, existed, that the defendant could have no knowledge or intimation of the manner in which Franklin was doing business. On the trial the court asked plaintiffs' attorney to state his theory, and in reply the counsel said:

"Our theory of this case is that Mr. Franklin, for a time, continued in business there, and became involved, and that at that time, and before, also, he had received money from the defendant, and that as the transactions went on he became so involved that he did not continue and could not continue the business any longer in his own name, and at that time he received and obtained authority from the defendant to transact all the business in the future; and that he ran over several years in the name of the defendant; and that there were a large number of transactions of which this suit bears but a trifling proportion."

It was the theory of the plaintiffs on the trial, and

they urge that theory here, that Franklin was the general agent of the defendant in purchasing the goods in question; that he was such general agent—

1. By original appointment.
2. By ratification of his acts.

Again, the claim is made that defendant is bound by the acts of Franklin, by continued knowledge of Franklin's acts, and neglect and failure to disapprove of them or disaffirm them; by paying debts that Franklin contracted as agent; by on one occasion claiming the benefit of Franklin's acts as general agent; by receiving and retaining the goods purchased by Franklin as agent. The whole theory of the charge seems to have been that the claim made by plaintiffs was that Franklin had express authority to purchase these goods and have them charged to Mulder, the defendant, or that Franklin, acting without authority, purchased the goods in the name of Mulder, of which Mulder afterwards had notice, and made no objection, and by his acts he had ratified the transaction, and was therefore bound. The court charged the jury upon this question as follows:

"The plaintiffs' theory enters into this case, and they are as much bound by it, because they present a distinct theory, as they are bound by the pleading, the declaration, and the bill of particulars; and their only claim is, that the several letters annexed or attached to the deposition were forwarded from Fremont Center to the house at Utica, and upon these letters they sent a portion of these goods. Now, the simple question of fact for you to determine is, from all the evidence in the case, did the man Mulder authorize the writing of these letters, did he expressly authorize that act to be done, or, in other words, if he didn't expressly authorize the act to be done, did he have knowledge of the fact that it was done, and did he remain silent and virtually acquiesce in that way? Did the man Mulder have knowledge of the fact that pursuant to these letters these parties shipped to him and consigned to him to Fremont Center the goods in ques-

tion? Did he have knowledge of that fact? Did he authorize the party who wrote this letter, Mr. Franklin, or any one else, to send out those letters and have the goods shipped in the manner in which they claim they were,— and there is no doubt but what they were so shipped,— or did he have knowledge of the fact that it was being done? Next, as to the orders sent into the house by the traveling salesman. Did Mr. Mulder give the traveling salesman the order? If he did, he is bound? Did Mr. Mulder authorize the man, or any man, to give the traveling salesman the order? If he did, he is bound. Did Mr. Mulder know of the fact of any man acting, or pretending to act, in the capacity of an agent for him, and giving this order and sending it to the house? Did he have the knowledge of the fact, the same knowledge of the fact, that the man, though unauthorized, had of the fact? If he did, he is bound by the transaction; if he didn't, gentlemen, he is not. So that it resolves itself simply into this one question:

"It is claimed upon the part of the plaintiffs in this case that Franklin was expressly authorized to use the name of the defendant, Mulder, in the purchase of goods, —expressly authorized to do so; and it is claimed that he had a conversation with this man, and told him to use his name, told him for what purpose, and that the man Mulder either authorized him, or did not dissent from it; and that pursuant to that authority he acted. That is the claim on the part of the plaintiffs, and if their theory is correct the plaintiffs are entitled to recover at your hands.

"It is claimed upon the part of the defendant, first, that he gave no express authority; that he had no knowledge whatever of the fact that these letters were written at all, or that this man was dealing in that manner; that he did not receive the invoices; that he did not know of the fact that goods were being shipped in the way in which they were; that he had no understanding whatever with this man; and that he was entirely ignorant of the fact that transactions like this were going on between these parties. If that is so, they are not entitled to a verdict at your hands. There is the theory upon the one side and the theory upon the other, and it is a question of fact for you to determine."

The complaint made by counsel for plaintiffs is that

this charge and the other portions of it throughout were based upon the theory of a special agency, express or implied, to purchase the goods in question, and excluded entirely the theory upon which the plaintiffs wholly planted their case, namely, the theory of a general agency or authority to purchase goods in the name of the defendant. Plaintiffs' counsel presented his views of the law of the case in certain written requests to charge, which the court refused to give the jury, and upon this refusal error is assigned. The counsel for plaintiffs requested the court to instruct the jury as follows:

"4. If you find from the evidence that defendant knew that Franklin was assuming to act as his agent, and was ordering goods in his name, and that such goods were actually being consigned to him, and he, by his silence, permitted plaintiffs to believe that such an agency actually existed, such silence would be a ratification of the agency, the defendant cannot now deny such agency, and the plaintiffs are entitled to recover in this action whatever such goods were reasonably worth.

"6. If you find from the evidence that plaintiffs, in good faith, shipped goods to defendant, and sent him invoices therefor, whether defendant had knowledge of such goods being ordered in his name or not, if he actually received these goods, either by receipting to the railroad or express company for them, himself, or authorizing some one else to receipt for them in his name, then he is liable * * * for what the goods are reasonably worth.

"7. If you find that defendant authorized any person to receive goods consigned to him, and receipt therefor to the railroad or express company, delivery of goods to such person would be a delivery to the defendant.

"8. If you find from the evidence that defendant had knowledge that Franklin was ordering goods in his name, and took no steps to disaffirm such purchases, this would constitute such a ratification of Franklin's acts as to render defendant liable for all goods so purchased, whether the fact of each individual purchase was brought to the knowledge of defendant or not.

"9. If you find from the evidence that Franklin ordered

the goods mentioned in plaintiffs' bill of particulars in defendant's name, without authority so to do from defendant, or without defendant's knowledge, yet if a knowledge of these facts afterwards come to defendant, and he failed to repudiate the unauthorized acts of Franklin, and notify plaintiffs within a reasonable time after learning of the same, he cannot now deny that Franklin's acts were unauthorized, and your verdict must be for the plaintiffs."

Under the circumstances shown by this record the plaintiffs were entitled to have each and every one of these requests to charge given to the jury by the court. These questions were not covered by the general charge, or not fully covered. It appeared from the testimony on the part of the plaintiffs that defendant, Mulder, knew that Franklin was assuming to act as his agent, and was ordering goods in his name, and that such goods were actually being consigned to him, and there is no pretense on the part of defendant that he made any objection to this course of dealing on the part of Franklin, and the matter should have been submitted to the jury upon this theory of the case, and if they found that Franklin was assuming to act as the general agent of defendant in purchasing goods, to the knowledge of defendant, and defendant knew that these goods were being so shipped, then the defendant would certainly be liable for their reasonable value. And, again, if these invoices came to defendant, and he took the goods, or ordered them to be taken, from the depot and express-office, and delivered to Franklin, the plaintiffs having shipped them in good faith to defendant, believing he ordered them, then the defendant, under the circumstances here shown, would be held liable for their reasonable value. There can be no question that if Franklin ordered the goods in defendant's name, without his (defendant's) authority or knowledge, yet if knowledge of these facts afterwards came to

the defendant, it was his duty to notify the plaintiffs of the facts within a reasonable time, and if he failed so to do he would now be estopped from denying Franklin's acts. These views were not presented to the jury under the charge as given. The plaintiffs had a right to have such a theory of their case given to the jury. This theory was warranted by the evidence given by the plaintiffs, and it was error to refuse to give the requests.

It is apparent to us from the testimony of the defendant himself that he had some knowledge of the manner in which Franklin was conducting his business, and that Franklin was using his (defendant's) name in the purchase of goods, though he makes a general denial of all Franklin's statements in relation to the transaction. We do not desire to trespass upon the domain of the jury in determining questions of fact, but the court below put the theory of the defendant to the jury as based upon the absolute denial by defendant of every material fact alleged by the plaintiffs of defendant's knowledge of Franklin's conduct. This was not fair to plaintiffs' case without the court calling the attention of the jury to what the defendant admitted he knew of Franklin's dealings; and if this had been presented to the jury, it seems to us the jury might have found defendant had sufficient knowledge of the conduct of Franklin in relation to these transactions to put him upon inquiry, at least, if not to have estopped him from denying the agency. One cannot be permitted to sit by and see another constantly using his name in the purchase of goods, receive the invoices showing the purchase in his name, give orders for the goods to be taken from the depot and express-office, see the other dealing them off as his own, and then, when called upon for payment by one who has been acting in good faith, repudiate the

whole transaction, and deny the agency. Such silence must be construed as a ratification of the act of the other, though no authority, express or implied, for the purchase was given originally

For the errors pointed out the judgment of the court below must be set aside, with costs, and a new trial ordered.

CHAMPLIN, MORSE, and CAMPBELL, JJ., concurred. SHERWOOD, C. J., did not sit.