ADELMER D. PLUMB v. THE CITY OF GRAND RAPIDS.

*Municipal corporations—Public park—Dedication—Acceptance— Revocation—Estoppel.*

1. An east and west city street was impassable from a point near the foot of a hill, which it ascended, to its intersection with a north and south street on the top of the hill. Petitions were presented to the city council to discontinue *this* portion of the street, and establish in its place a circular or crescent-shaped street, the arms of which should skirt the hill and meet the street at the top. A property-owner whose land would be injured by the grading of said street executed a deed of a right of way for the proposed *new* street, and presented it to the common council; the consideration named being the sum of one dollar, and the descontinuance of said portion of said street. The council granted the prayer of the petitioners, and accepted the deed, upon condition, as stated in the resolution of acceptance, that the land between the intersecting street at the top of the hill and arms of the new street, and which was owned by the grantor of the right of way for the new street, should be kept and used as a public park. And it is held that the city could only act in the premises by public ordinance or resolution, and that the grantor will be presumed to have consented to the condition imposed, and that after the land was formally dedicated and accepted it was beyond recall by the grantor or any subsequent owner.

2. In such a case the subsequent conveyance of the land by the grantor is not evidence of a purpose or desire to recall the

dedication. The grantor retains the legal title, and the public use is an easement, which may be lost by non-user for the purpose for which the dedication was made, in which case the grantee, as owner of such legal title, would become entitled to possession, unincumbered by such easement.

3. In such a case the city is not estopped from asserting its claim to the land by its illegal assessment to the owner of the legal title, and its sale to and purchase by the city to satisfy the taxes levied under such assessment, the land being exempt for taxation by statute, of which fact all persons were bound to take notice.

Error to superior court of Grand Rapids. (Burlingame, J.) Argued April 16, 1890. Decided June 13, 1890.

Ejectment. Plaintiff brings error. Affirmed. The facts are stated in the opinion.

*Earle & Hyde,* for appellant.

*J. W. Ransom* and *W. Wisner Taylor,* for defendant.

CAHILL, J. This action was brought by plaintiff in April, 1888, to recover in ejectment the following described premises, which are now occupied and claimed by the city of Grand Rapids as a public park, under the name of " Crescent Park." The premises described in the declaration are as follows:

" That part of lots two (2), three (3), six (6), and seven (7) of block twenty-three (23) of Dexter fraction of the city of Grand Rapids, according to the recorded plat thereof, lying east and north of the westerly and southerly line of a certain street running through said lots, called ' Crescent Street;' also a strip of land bounded on the north by lot twenty-two (22) of said Dexter fraction, on the east by Bostwick street, on the south by said lot two of block twenty-three (23), and on the west by Crescent avenue, being a strip of land formerly a part of Bronson street, now called ' Crescent Avenue;' also lot twenty-two (22) of block twenty-two (22) of Dexter fraction aforesaid,"—which said premises the plaintiff claims in fee.

Both parties claim the property through Mrs. Adeline

M. Johnson, who was admitted to have been the owner in 1858. She conveyed the property in 1864 to Orrin S. Camp, by warranty deed, and Mr. Camp conveyed to plaintiff in 1887 by quitclaim deed. The city claims that the plaintiff cannot legally assert title to the land in question,—

1. Because Mrs. Johnson dedicated the property to the public as a park in 1858.

2. Because Mr. Camp, to whom Mrs. Johnson had conveyed the property, by his acts in 1875 and 1881, had estopped himself from making claim to the property.

3. Because the plaintiff, as a member of the board of public works from 1881 to 1884, inclusive, during the time that the property was being improved by the city as a park, had consented to and actively participated in such improvements, and was thereby estopped.

The plaintiff, in addition to the original title, showed a tax title to himself for State taxes of 1873. The defendant also showed tax titles to the city for special taxes assessed against the property in 1875, 1876, 1880, and 1882, but all these tax deeds were admitted on the trial to be void for irregularities, and neither party claims title under them.

The case was tried before Hon. Edwin A. Burlingame, judge of the superior court of Grand Rapids, without a jury, who made and filed written findings of fact and of law, upon which a judgment was entered in favor of the defendant. The case is brought to this Court on exceptions to such findings, and also on exceptions to the admission of evidence. There are only three questions open to us upon this record. They are:

1. Are the findings of fact supported by evidence?

2. Was any incompetent testimony admitted and considered by the court in reaching a conclusion upon the facts?

3. Do the facts found support the judgment?

Upon the question of the dedication of this land by

Mrs. Johnson to the city for its use as a park in 1858, Judge Burlingame found the facts to be as follows:

"4. On the 14th day of October, 1858, residents and property owners on Bostwick and Bronson streets petitioned the common council of the city of Grand Rapids to vacate that part of Bronson street in said city lying between the west line of Bostwick street and the east line of the alley running north and south through blocks twenty-two and twenty-three, Dexter fraction, and to establish, in place of said street so discontinued, a circular street designated on the map annexed to and accompanying said petition.[1] Said circular street, asked to be substituted in place of the vacated street, runs around said vacated street in the form of a crescent, in a north-easterly and south-easterly direction, from the east line of said alley to the west line of said Bostwick street, and is equi-distant from the said vacated street north and south of said vacated street. The shape of the street asked to be substituted is that of a crescent, and that portion of it lying south of the center line of the vacated street is called, in this case, 'the south arm of the crescent;' and that north, 'the north arm.'

"There were two petitions asking for this change presented to the council, one of which was signed by Geo. K. Johnson, Francis H. Cuming, and twelve others; the other, by Peter R. L. Pierce and thirty-one others. The premises in controversy are situated between the two arms of the crescent, as above designated. The plaintiff claims title and right of possession by deed from Orrin S. Camp, of date October 24, 1887, who received a conveyance of said premises, with others, from Geo. K. Johnson and Adeline M. Johnson, his wife, October 3, 1864, said Adeline M. Johnson being the owner thereof in fee.

"5. Bronson street, at the time of the presentation of these petitions to the common council, extended from Canal street on the west, to Union street on the east. The natural surface of the ground was comparatively level from Canal street east to Division street, and from Division street east to the alley running north and south through said blocks twenty-two and twenty-three, Dex-ter fraction (between Bostwick street and Division street), the ascent was easy; but at said alley, and from that point east to the west line of Bostwick, the ascent was abrupt, and the street impassable by reason thereof. It was an immense hill of shifting dry sand from the alley up, steep and precipitous, extending for a long distance north and south of said Bronson street, and the land on each side next to said Bronson street, between the west line of Bostwick street and said alley, and was of little or no value in its then condition.

---

[1] This map will be found on page 395.

"6. The petitions mentioned in the fourth paragraph of these findings were referred by the common council to its committee on streets at the same date of their presentation to that body, viz., on the 14th day of October, 1858.

"On the 21st day of October, 1858, the said Francis H. Cuming and wife and the said Geo. K. Johnson and wife presented to the said common council a deed to the city of Grand Rapids of the grounds covered by said proposed circular street asked for in said petition, upon the back of which deed was a profile of said circular street. The consideration of said deed was the sum of one dollar, and the vacation and discontinuance of so much of Bronson street as lies between lot number two of block twenty-three, and lot number twenty-two of block number twenty-two, of Dexter fraction; being that part of said Bronson street lying between the west line of Bostwick street and the east line of the alley running north and south through blocks twenty-two and twenty-three.

"The committee on streets, to whom was referred the petition of G. K. Johnson and others relative to the discontinuance of 'a portion of Bronson street, and laying two circular streets in place thereof,' reported as follows:

"'That they believe the prayer of the petitioners should be granted, provided the two circular streets shall be made according to the profile on the back of the deed submitted this evening, and that the ground included within and between said streets shall be secured to the city, always to be kept as an open park, without buildings of any kind thereon.'

"This report was then and there (on the 21st day of October, 1858) accepted and adopted by the common council. The deed from Cuming and wife and Johnson and wife was not presented until after the adoption of said report, and of the resolution vacating Bronson street, and establishing Crescent street, and, when presented, was accepted. It was then moved that the said deed presented this evening be recorded. Motion to lay same on the table carried. At the same meeting, after the adoption of said report and following it, said common council took proceedings to vacate, discontinue, and close forever so much of Bronson street as lies between the west line of Bostwick street and the east line of the alley running north and south through blocks twenty-two and twenty-three, Dexter fraction, in the city of Grand Rapids, and did then and there vacate, discontinue, and close the same. The said circular streets were established at the same time in the place and stead of said vacated portion of said Bronson street, and were called 'Crescent Avenue' by said common council, and have been known as such ever since.

"After the action of the council as last above, but at the same meeting, the common council adopted the following resolution:

"'Resolved, That when that portion of Bronson street east of

Division street, and the street which is now designated as "Crescent Avenue," are graded, the line of grade shall be uniform; that is to say, from the grade of Bronson street, at its intersection with Division street, as established, to the intersection of Crescent avenue with Bostwick street, shall be a uniform ascent.'

"After the adoption of the foregoing resolution, a motion was made to reconsider the action of the council, laying the said deed from Johnson and Cuming on the table, which motion was lost. On the 28th day of October, 1858, the then proprietors of the land through which that portion of Bronson street vacated by the common council of said city runs, and also of the land through which said new street called 'Crescent Avenue,' connecting said Bostwick with said Bronson street, runs, in a written communication to said council, acknowledged that they had due notice of such vacation of Bronson street, and such laying out of Crescent avenue, and of the application to said common council for such vacation and laying out of said streets, and waived all advantage of exception to the proceedings of said common council in the matter of such vacation and laying out.

"7. I further find from the evidence in the case that, from the time of the presentations of said petitions to the common council to the time of the conveyance of the premises in question, there has been a desire and attempt on the part of the proprietors of the land covered by Crescent avenue, and the other lands inclosed thereby, to get said Bronson street abandoned, and the crescents established and graded instead; that the deed hereinbefore referred to was made out to the city of Grand Rapids by the proprietors for the land for the street, which was accepted by the common council on behalf of the city, on condition that the land inclosed between the crescents should be under public control for park purposes, and so agreed, and that the proprietors have acted on that idea, and so construed the action of the council from that time (1858) until the present; that the south arm of Crescent avenue was graded by the proprietors per agreement within a few months after the acceptance of said deed and the vacation of said Bronson street, and said proprietors were to grade the north arm thereof whenever the common council should order the same to be done. That agreement above referred to, was presented on the 28th day of October, 1858, and is as follows:

"' STATE OF MICHIGAN, }
  "'COUNTY OF KENT,    }
"'City of Grand Rapids. }

"'Whereas, the common council of said city did, at the session thereof held on the 21st day of October, present, vacate that part of Bronson street lying between the west line of Bostwick street and the alley running though blocks numbered twenty-two and twenty-three of the Dexter fraction, so called, in said city of Grand

Rapids, and did open and lay out a street called "Crescent Avenue," connecting said Bronson and Bostwick streets:

"'Now, therefore, in consideration of the aforesaid action of said common council, and of the benefits therefrom accruing to us in the disposition and use of our real estate situate on and bounded by said streets, the undersigned owners of the parcels of land embraced within and bounded by said Bostwick and Crescent streets do hereby covenant and agree with the said city of Grand Rapids that we will maintain and keep the said parcel of land an open space or inclosure, and will not erect buildings thereon to cover said parcel of land, in whole or in part, without the consent of the said common council first had and obtained thereto.

"'And in consideration, also, of said vacation of Bronson street as aforesaid, and of said laying out of Crescent avenue, we do further agree with the said city of Grand Rapids that we will, at our own cost and expense, work the said Crescent avenue to the established grade, and prepare and work the same fit for use as a street, the south part thereof to be so worked and prepared for use by or before the 1st day of January next, and the north part thereof to be so worked and prepared for use whenever the said common council shall make an order to that effect.

"'And we further agree that the covenants aforesaid shall be obligatory on our heirs, assigns, and all legal representatives whatever.

"'In witness whereof we have this 28th day of October, A. D. 1858, set our hands.

"'Geo. K. Johnson.
"'F. H. Cuming.'

"The foregoing agreement was ordered on record and on file. Immediately after the acceptance and disposition of said Johnson and Cuming agreement the clerk of the council was instructed by the council to cause to be recorded the deed presented at the last meeting by Geo. K. Johnson and F. H. Cuming.

"The shape and location of Crescent avenue, as thus established, and the lands embraced within the crescents, and bounded by said Bostwick street and Crescent avenue, as they appear on the map or plat at the foot of the deed, are in all respects as they appear to-day, so far as shape and location are concerned."

It is said by plaintiff that these findings fail to show a dedication of the land in question to the public by the owner, Mrs. Johnson; that at most they show an agreement by George K. Johnson, the husband of Mrs. Johnson; and that there is no finding of authority in him to make such agreement for his wife. The finding is that Mrs. Johnson's deed, conveying the land to be occupied by Crescent avenue,—

"Was accepted by the common council on behalf of the city, on consideration that the land inclosed between

the crescents should be under public control for park purposes, and so agreed."

Mrs. Johnson was desirous of having her deed accepted, because upon its acceptance depended the vacating of that part of Bronson street the grading of which would have injured her residence. To this end she executed the deed, and placed it in her husband's hands, with authority to take such action in dealing with the city authorities as was necessary to accomplish her object. She did not intend that the deed should take effect without affirmative action on the part of the city granting the concession which furnished the chief consideration for her executing it. The city could only act by public ordinance or resolution, of which Mrs. Johnson was required to take notice. When, therefore, upon the presentation of the petitions for the vacating of that part of Bronson street, and also the deed from Mrs. Johnson conveying the right of way for Crescent avenue, the city, by resolution, decided to accept the deed, and make the desired changes in the streets, on the condition "that the ground included within and between said streets shall be secured to the city, always to be kept as an open park, without buildings of any kind thereon," Mrs. Johnson will be presumed to have known of and consented to the conditions imposed.

It is urged by the plaintiff that the city did not accept Mrs. Johnson's deed on October 21, nor take any final action thereon until October 28. If this be conceded, then it appears that Mrs. Johnson had a week after the adoption of the resolution of October 21, from which I have just quoted, within which to determine whether she would accede to the terms proposed by the city, or withdraw her deed. That she allowed the deed to be delivered to and accepted by the city would have been conclusive upon her at the time. That she so understood it

is evidenced by the fact that within a few months she joined with others in grading the south arm of Crescent avenue, as required by the agreement with the city.

But, it is said, the agreement executed by George K. Johnson and F. H. Cuming, bearing date October 28, and presented on that day to the common council, was not an acceptance of the terms proposed by the city, but was a new proposition, by which the owners of the property themselves agreed to maintain and keep the parcel of land in question an open space or inclosure without buildings, etc.; that this proposal did not contemplate or involve any dedication of the land to the public use. We do not so construe it. We think it was intended by the parties to furnish written evidence of the acceptance of the conditions imposed by the city. It was not strictly necessary, because, as I have shown, the delivery of the deed on the terms imposed was an acceptance which bound the owners of the land. But it is not to be supposed that the owners of this land would surrender all beneficial use of it, and at the same time insist upon their right to maintain it as an open space at their own expense. It was a barren waste of drifting sand, of little or no value in its then condition. The record shows that, if left in its natural state, Crescent avenue could not be used as a street, because of the sand which drifted into it from the space between the two arms of the crescent. The grading, terracing, and turfing of this space was therefore a necessary part of the general plan. To say that the purpose of the agreement of October 28 was to secure to the owners of this land the right to do all this necessary work at their own expense is not reasonable.

As evidence that the parties themselves did not so understand it, the following facts found by the trial judge, upon competent evidence, are significant:

"The title of the plaintiff to the premises in question is derived

from Camp alone. They were assessed to Camp for the improvement of Bostwick street, in 1875. In a communication to the common council on the subject at that time, Camp insisted that the premises in question were dedicated to public use in 1858, and that he was not, therefore, liable to such assessment, and asked to be relieved therefrom. Such proceedings were thereupon had that Camp was relieved from the assessment, the property was sold by public sale on account of the assessment upon it, bid in by the city, and the assessment, amounting to $419.60, was paid by the city from the general fund."

"13. In 1878 the subject-matter of the *status* of these premises came up, and was referred by the common council to the city attorney. Camp told the city attorney at that time they were public property, dedicated to the public for the purpose of a park, and after conversations of this character with Camp, and reference to records Camp then produced, and the action of the common council and of the proprietors in 1858 in relation thereto, to the effect it was then dedicated to the public use, and so understood by the then proprietors and the city authorities, the city was advised that the premises in question, between the two arms of Crescent avenue and west of the west line of Bostwick street, was a public open space by dedication, and that Crescent avenue was a public street by dedication by the proprietors of the ground occupied by it, and by action of the common council thereunder."

"15. The city took action from time to time in relation to the improvement of said Crescent avenue, and of the intervening space, but nothing resulted from it until 1880, when an extensive and thorough improvement of said space, in the way of grading, constructing terraces, sodding, building walks, constructing a fountain therein, setting out shade-trees therein, and otherwise beautifying and adorning it as a public space or park, was inaugurated by the city. These improvements were made from time to time, commencing with the circular street called 'Crescent Avenue,' in 1880, then the park or intervening space, and running through a period of four years before they were completed. Work was going on in the years 1881, 1882, 1883, and 1884. During that time the city spent public moneys on this park in making the improvements thereon above mentioned to an amount exceeding $5,000. The public have been in the uninterrupted use and enjoyment of the park since the time last mentioned.

"16. Camp, all this time, lived in full view of the park, with only the width of Bostwick street between the park and his place of residence. The improvement of Bostwick street, first between Bridge and Lyon streets, then the improvement of the crescent (called 'Crescent Avenue'), with the intervening space of Bostwick street between the north and south arms of the crescent, and then

the improvement of the park between the arms of the crescent, were all carried on and made under the eye of Camp, and with his assent. The improvements of the park, hereinbefore mentioned, were made with his full knowledge and assent, without any protest or claim from him that they were private grounds. His assent was an active one. He saw the work of grading of the park go on almost every day; made no objection to it; on the contrary, seemed to be pleased with it. He offered to furnish the contractor with dirt to fill up the grade to take the place of gravel removed below the grade. He made suggestions from time to time how the work should be done.

" 17. The contract for the work of improving the park was let by the board of public works, and was executed December 4, 1880, and the work of grading was done during the winter of 1880 and 1881, and the spring and summer of 1881. The other improvements were made during the three years following. The plaintiff was a member of the board of public works from May, 1881, to May, 1884. During the years 1881, 1882, 1883, and 1884, while he was a member of said board, he regarded the premises in question as public grounds, to be used by the public as an open space or park, and treated them as such in his official capacity, and voted for and procured by such votes, from time to time, the expenditure of public moneys thereon to grade, improve, beautify, and adorn the same during those years, the sum of $3,800.

" 18. I further find from the testimony that Bronson street, from the west line of Bostwick street to the east line of the alley running north and south through blocks twenty-two and twenty-three, Dexter fraction, in the city of Grand Rapids, was vacated and abandoned, and the crescents substituted and accepted in its stead, by the joint action of the city authorities and of the property-owners on said Bronson street, and of the proprietors of the premises in question, in 1858; that the city proceeded to grade, and did grade, the crescents as a public street, under the name of ' Crescent Avenue'; that it proceeded to grade, and did grade, the space inclosed by the two arms of the crescent as a park, or open public space, and has, without protest, and with the acquiescence of all the owners of the adjacent property, and the proprietors of the premises in question, ornamented and beautified it as a park or open space, and made it, at large expense, just what it is; and that there never was any claim set up to it as private grounds, subject to private possession, by the plaintiff or any one else, until the entire expense of its improvement as a park (amounting to the sum of $5,700) had been incurred, and not then by any person ignorant of the situation or of the claim and occupation by the public of the premises as public grounds."

The finding of the trial judge that the land in question was dedicated by the owners, in 1858, to a public use is supported by competent evidence. By the same evidence it appears, also, that the dedication was accepted. Any formal act of the common council, implying acceptance, is evidence of it. Ang. Highw. (3d ed.) § 157. Here the formal acceptance was in the resolution stating the terms on which the deed would be accepted, and the proposed changes in the streets provided for. It was further shown in the vacating of a part of Bronson street, and the opening and grading of the south arm of the crescent, which took place shortly after. After the land was thus formally dedicated and accepted, it was beyond recall by Mrs. Johnson or any subsequent owner. Nor was the conveyance of this with other lands by Mrs. Johnson to Camp, in 1864, any evidence of a purpose or desire on her part to recall the dedication. The legal title was still in her, notwithstanding the dedication. The public use was an easement, which might be lost by non-user for the purpose for which the dedication was made. In such case, the plaintiff, as the owner of the legal title, would become entitled to the possession, unincumbered of the public easement. *County of Wayne v. Miller,* 31 Mich. 447; *White v. Smith,* 37 Id. 291; *Cass Co. Supervisors v. Banks,* 44 Id. 467; *Cincinnati v. White,* 6 Pet. 431.

It is strongly urged upon us that, even if the city once had rights in this land by virtue of the dedication in 1858, its conduct in causing the property to be assessed for taxes to Mr. Camp several years, and one year as " unknown," and in allowing it to be sold and bid in to the city, was inconsistent with its present claim of title, and that the city is estopped to assert such inconsistent claims.

The doctrine of estoppel *in pais* is one difficult of application to municipal corporations. It must rest upon the fact that the party estopped has knowingly done, or

omitted to do, some act which another party in interest had a right to rely upon, as indicating a particular purpose or intention, and, having such right, did rely upon it to his prejudice. The difficulty of applying this doctrine to municipal corporations grows out of the fact that, as a rule, they can only speak or act by their governing bodies or specially authorized officers, whose powers and duties are expressly defined and limited by law. If they act within the limits of their powers, their action is legal and binding upon the corporation, and the doctrine of estoppel need not be invoked. If they act beyond the limits of their authority, no one has a right to rely upon such action as binding upon the corporation, or to be misled thereby, because all are bound to take notice of the public law which defines their powers.

Applying these principles to the question here to be decided, we find that the acts which are claimed to operate as an estoppel against the city were those of the taxing officers, who were required to perform certain statutory duties relating to the assessment and collection of taxes. While acting within their jurisdiction, their action was binding upon every one. If they acted without jurisdiction, their action bound no one.

During the years 1871, 1875, 1876, 1880, and 1882, when this property was assessed for taxes, if it was city property, it was exempt from taxation under the following provision of the statute:

"All public or corporate property of the several counties, cities, villages, townships. and school-districts in this State, used or intended for corporate purposes.", How. Stat. § 1005 (subd. 7).

All assessments and sales of the property for taxes, if the title was in the city, were absolutely void. There was no officer or body in the city that could lawfully subject such property to taxation, and of this all persons

were bound to take notice. No one had a right to suppose that the city was intending to waive its rights, because its officers, acting without authority, were assessing this land for taxation. No one had a right to be misled by such acts, and there can be no estoppel, unless a party is misled to his injury. *Palmer v. Williams*, 24 Mich. 328; *Crane v. Reeder*, 25 Id. 304; *DeMill v. Moffat*, 49 Id. 125. In so far as the cases cited by plaintiff's counsel in 36th, 39th, 44th, and 49th Iowa reports conflict with the views here expressed, we do not follow them.[1] *Baker v. Johnston*, 21 Mich. 319; *Ellsworth v. Grand Rapids*, 27 Id. 257; *People v. Railway Co.*, 41 Id. 413; *Lake Shore, etc., Ry. Co. v. People*, 46 Id. 193; *Boardman Tp. v. Flagg*, 70 Id. 372; *Association v. Topeka,* 20 Wall. 655.

Mr. Camp, the then owner, not only had no right to be misled, but it affirmatively appears that he was not; that he called the attention of the city to the fact that this property which belonged to the city had been erroneously assessed to him, and asked to be relieved from personal liability to pay the tax. He was relieved, whether by express action of the city does not appear, but the collector who had been calling on Camp to pay the tax desisted, the property was returned and sold, and bid in by the city, which amounted to a payment of the tax. The city is not estopped to claim this property under the original dedication of 1858.

I have examined the errors assigned upon the admission and rejection of testimony, and I discover nothing which could have affected the result of the case. They therefore become unimportant.

The judgment is affirmed with costs.

The other Justices concurred.

---

[1] See *Land Co. v. Story Co.*, 36 Iowa, 48; *Adams Co. v. Railroad Co.*, 39 Id. 507; *Austin v. Bremer Co.*, 44 Id. 155; *Simplot v. Dubuque*, 49 Id. 630.