CUDAHY BROTHERS CO. *v.* WEST MICHIGAN DOCK & MARKET CORP.

1. Principal and Agent—Knowledge of Agent Chargeable to Principal—Ratification—Estoppel.

The knowledge possessed by plaintiff's salesman who procured numerous orders for shipments of plaintiff's products from tenant located in space in defendant's market building that the purchases were being made by such tenant, doing business under an assumed name, that plaintiff was to look to him for payment and adjustment of irregularities and discrepancies in the account notwithstanding goods were shipped and billed to defendant *held*, chargeable to plaintiff as a matter of law and precludes recovery from defendant by reason of ratification or because of estoppel.

2. Landlord and Tenant—Principal and Agent.

In action of assumpsit to recover balance of purchase price for meats alleged to have been sold defendant, record *held*, without testimony tending to prove relation of principal and agent between defendant and tenant from whom plaintiff's salesman received orders for its products.

3. Principal and Agent—Ratification—Estoppel.

   One may be held liable as principal for the unauthorized act of another as his agent either on the theory of ratification or of estoppel.

4. Same—Ratification.

   Ratification must rest upon action or inaction of one sought to be charged which is subsequent to the act of the alleged agent and gives effect to the act as to some or all persons as if it were originally authorized.

5. Same—Unauthorized Acts—Acceptance of Benefits—Ratification.

   When a person adopts the unauthorized acts of another made in his behalf and has received the benefits accruing therefrom he is held to adopt and ratify the instrumentalities by which the fruits were obtained.

6. Same—Silence—Good Faith—Ratification.

   One cannot be permitted to sit by and see another constantly using his name in the purchase of goods, receive the invoices showing purchase in his name, see the other dealing them off as his own, and then, when called upon for payment by one who has been acting in good faith, repudiate the whole transaction and deny the agency.

7. Same—Estoppel—Ratification—Prejudice.

   The main distinction between ratification and estoppel is that the substance of estoppel is the inducement to another to act to his prejudice, whereas the substance of ratification is confirmation after conduct; hence, liability resulting from ratification arises from intention, express or implied, whereas liability arising from estoppel results despite intention because other party will be prejudiced and defrauded by his conduct unless the principal is bound; estoppel requiring prejudice and ratification not resting thereupon.

8. Estoppel—Prejudice.

   There can be no estoppel unless a party is misled to his prejudice by the conduct of the person against whom it is set up, and acts are done relying upon conduct calculated to mislead.

9. Landlord and Tenant — Market Building — Principal and Agent—Disavowal of Liability—Knowledge of Agent.

   Landlord, owner of market building, *held*, not liable for balance of purchase price of meats for which plaintiff's salesman se-

cured orders from defendant's tenant where salesman knew tenant was purchasing on his own account and not as defendant's agent and defendant did not profit by the tenant's transactions with plaintiff, notwithstanding defendant received letters and invoices of goods as billed to it and did not timely disavow liability; plaintiff being bound by its salesman's knowledge.

Appeal from Muskegon; Sanford (Joseph F.), J. Submitted April 6, 1938. (Docket No. 28, Calendar No. 39,862.) Decided June 6, 1938. Rehearing denied October 3, 1938.

Assumpsit by Cudahy Brothers Company, a Wisconsin corporation, against West Michigan Dock & Market Corporation, a Michigan corporation, for sums allegedly due on account. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff appeals. Affirmed.

*Smedley & Stribley,* for plaintiff.

*Edward C. Farmer* and *Lou L. Landman,* for defendant.

NORTH, J. Cudahy Brothers Company, plaintiff herein, is a Wisconsin corporation. Its business is wholesaling meats and kindred products. It brought this suit to recover a balance of the purchase price for meats alleged to have been sold by it to the defendant, West Michigan Dock & Market Corporation. The defendant owns and operates a cold storage plant, a freight warehouse and dock at Muskegon, Michigan. It is known as the Mart. The case was tried by a jury and plaintiff had a verdict for $2,661.87; but on defendant's motion judgment *non obstante veredicto* was entered. Plaintiff has ap-

pealed on the sole ground that the circuit judge erred in entering this judgment.

There is no question but the merchandise for the price of which suit is brought was sold and delivered by plaintiff. However, defendant asserts that it did not give the orders for or receive the meats shipped; but instead the buyer was one Albert Misket. It is plaintiff's contention that defendant should be found liable for the account on the theory that Misket acted as defendant's agent. While there is no proof of an actual agency, plaintiff does contend that liability should attach to defendant on the theory that it ratified the acts of Misket as its agent or that it is estopped from denying liability for the purchases by Misket as defendant's agent.

Defendant rents portions of its property to parties who carry on various commercial activities. Albert Misket, who did a "meat truck business," was such a tenant doing business under the assumed name of West Michigan Wholesale Meat Co. His wife was associated with him in the business. In front of the space occupied by Misket he maintained a sign about five feet long and two feet wide which read "West Michigan Wholesale Meat Company, Distributors of Oscar Mayer's Meats." The mail for defendant's tenants was delivered at the general office of the Mart and an employee distributed it to the respective tenants. Misket testified that this mail clerk at his direction delivered all mail pertaining to meats at his office.

On February 1, 1936, Misket contacted John Kloosterman, who was a salesman for plaintiff in the Muskegon territory, and gave him the initial order for a shipment of meat from plaintiff. In all there were 65 shipments. Fifty-one of these shipments

made prior to June 6, 1936, were paid, but payment was not made for the balance of the shipments which continued to June 29th. All shipments (with seemingly one exception) were made and billed to the West Michigan Dock & Market Corporation. There is testimony they were tagged "West Michigan Dock." When the Cudahy shipments arrived they were either taken by or turned over to Misket's employees and used in his business. Plaintiff received 14 checks in payment on account. Each of these checks was signed "West Michigan Wholesale Meat Co., by A. Misket." The circumstances of taking the first order in defendant's name and of continuing the account in defendant's name is to some extent disclosed by the following testimony of Misket, which is somewhat significant because in so far as it pertains to opening the account in defendant's name this testimony is not disputed by plaintiff's salesman, Kloosterman, although he was a witness:

"He (Kloosterman) asked me who we wanted the first order made out to. * * * He said that the Mart had an established rating, that the West Michigan Dock & Market Corporation did and we did not, and he said he would bill it to them.

"Q. And the bills, after he told you he was going to bill it to the West Michigan Dock & Market Corporation, did come through that way?

"A. Yes, sir, they did.

"Q. Then when you talked to Mr. Kloosterman in May relative to this matter he said he believed there was some confusion and it would be corrected?

"A. Yes, that is right.

"Q. And it was not corrected?

"A. That is right. None of the 65 orders were prepared by me. I had nothing to do with the statements appearing upon them. * * * It was entirely Mr. Kloosterman's work. That was true of the 14

orders that were offered in evidence here covering the period from June 6th on. I never wrote up any order on any Cudahy order blank.''

Clearly from the outset and throughout these dealings Kloosterman knew the orders he was taking were Misket's orders, not those of defendant. He so testified:

''*Q.* The question is whether you had any knowledge he was doing business as the West Michigan Wholesale Meat Company until after Mr. Keyser (plaintiff's credit manager) came over here (July 1, 1936).

''*A.* I never had an account as the West Michigan Wholesale Meat Company.

''*Q.* Did you know he was doing business under that name?

''*A.* He might have used that trade name, as far as that is concerned, but that had nothing to do with me. I was not selling to him under that name.

''*Q.* Didn't you know he was doing business under that name, Mr. Kloosterman? Just answer the question yes or no.

''*A.* Yes.''

Even after McCrea, defendant's vice-president and general manager, protested about shipments of Misket's orders in defendant's name, Kloosterman did not advise his principal promptly. He testified:

''I did not immediately notify my company not to make further shipments to the credit or account of the West Michigan Dock & Market Corporation after my talk with Mr. McCrea (about June 27th).''

Kloosterman was frequently in Misket's place of business. He secured his orders from Misket, and he went to Misket to urge payment when the latter was slow in making payments on the account. Notwithstanding defendant's manager, McCrea, was on

the same premises, Kloosterman at no time went to McCrea to secure payment. The conclusion is inescapable that Kloosterman was well aware that this was Misket's account, not defendant's.

The legal question presented by appellant is whether the trial judge was correct in entering judgment in defendant's favor *non obstante veredicto*. The knowledge possessed by plaintiff's agent is chargeable to plaintiff as a matter of law. The result is that from the first of this series of transactions plaintiff is chargeable with knowledge that the purchaser was Misket, doing business as the West Michigan Wholesale Meat Co.; that the orders came from him; that plaintiff was to look to him for payment; that irregularities and discrepancies in the account were adjusted with Misket who was carrying on a business wholly independent of that of defendant. Under such a record there is no possibility of recovery by plaintiff on the theory that defendant is chargeable with Misket's purchases by reason of ratification or because of estoppel.

As hereinbefore stated there is no testimony tending to prove the actual relation of principal and agent between defendant and Misket; and the court so charged the jury. The only relation between the two disclosed by any testimony is that of landlord and tenant. But it is elementary that one may be held liable as principal for the unauthorized act of another as his agent either on the theory of ratification or of estoppel. This case was submitted to the jury solely on the question of ratification; but defendant's motion for judgment *non obstante veredicto* raises both the question of ratification and of estoppel. Among the reasons assigned in support of this motion are the following:

"Because there was no evidence to go to the jury on the question of defendant's alleged ratification of the claimed transactions between plaintiff and Albert Misket or his company.

"Because there was no evidence to go to the jury on the question of defendant's estoppel to deny the alleged authority of Albert Misket."

*Ratification.* In testing whether there is any evidence in this record tending to sustain plaintiff's theory of ratification, we must give consideration to what constitutes ratification of the act of an alleged agent such as to bind the principal. Ratification of necessity must rest upon action or inaction of one sought to be charged which is subsequent to the act of the alleged agent. Axiomatically there can be no ratification of the act of an alleged agent which act has not yet taken place.

"As applied to the law of agency, ratification is the affirmance by a person of a prior act which did not bind him, but which was done or professed to be done on his account, whereby the act is given effect as to some or all persons, as if originally authorized." 2 Am. Jur. p. 166.

"When a person adopts the unauthorized acts of another made in his behalf, *and has received the benefits accruing therefrom,* he is held to adopt and ratify the instrumentalities by which the fruits were obtained." *Busch* v. *Wilcox,* 82 Mich. 315, 332.

"It is a proposition of law too fundamental and too well established to require a citation of authorities that, if a party adopts even unauthorized acts of another, *and has received and accepted benefits accruing therefrom,* he thereby adopts and ratifies the instrumentalities by which the results were obtained, and is estopped from denying that the agent was authorized to act." *Bertha* v. *Regal Motor Car Co.,* 180 Mich. 51, 57 (8 N. C. C. A. 460).

The element of good faith (more fully considered hereinafter incident to estoppel) on the part of one who asserts ratification is also requisite.

"One cannot be permitted to sit by and see another constantly using his name in the purchase of goods, receive the invoices showing the purchase in his name, give orders for the goods to be taken from the depot and express-office, see the other dealing them off as his own, and then, when called upon for payment *by one who has been acting in good faith,* repudiate the whole transaction, and deny the agency." *Cooper* v. *Mulder,* 74 Mich. 374, 385.

*Estoppel.*

"The main distinction between ratification and estoppel is that the substance of estoppel is the inducement to another to act to his prejudice, whereas the substance of ratification is confirmation after conduct. Accordingly, liability resulting from ratification is a liability which arises from intention, express or implied; liability resulting from estoppel is liability which results despite intention, because the other party will be prejudiced and defrauded by his conduct unless the law treats the principal as legally bound. It is clear, therefore, that there cannot be an estoppel without some prejudice; but ratification does not rest upon prejudice." 2 Am. Jur. p. 172.

One who is cognizant of all the material facts can claim nothing by estoppel.

"There can be no estoppel unless a party is misled to his prejudice by the conduct of the person against whom it is set up, and acts are done relying upon conduct calculated to mislead." *Thirlby* v. *Rainbow,* 93 Mich. 164, 170.

To the same effect, see *Plumb* v. *City of Grand Rapids,* 81 Mich. 381; *Ladd* v. *Brown,* 94 Mich. 136;

*Murray* v. *Rugg*, 116 Mich. 519; and *Tower* v. *Township of Somerset*, 143 Mich. 195.

Charging plaintiff (as we must) with the information possessed by its agent Kloosterman, only one conclusion can be reached on this record. This conclusion is that the essential element of good faith on plaintiff's part is lacking. From the inception of plaintiff's dealings with Misket it knew he was purchasing on his own account, not as agent of defendant. Under such circumstances plaintiff was not deceived or misled. There is no showing that defendant profited at all by Misket's transactions with plaintiff. Since plaintiff, through its agent Kloosterman, is chargeable with actual knowledge that the sales were made to Misket, it is of no legal consequence that plaintiff, as it asserts, mailed defendant letters and invoices of the respective sales in which the merchandise was charged to defendant and defendant did not timely disavow liability. In spite of such fact, if it is a fact, plaintiff was not misled and it cannot recover on the theory that defendant is bound by the unauthorized acts of Misket as its agent either on the ground of ratification or estoppel. Instead Kloosterman as plaintiff's agent knew the sales were to Misket, who admits he owes the balance of the account, and plaintiff is bound by its agent's knowledge.

The judgment entered in the circuit court is affirmed, with costs to appellee.

WIEST, C. J., and BUTZEL, BUSHNELL, SHARPE, POTTER, CHANDLER, and McALLISTER, JJ., concurred.