Graves, J.:
In October, 1866, the defendant Ide executed a mortgage on certain premises in Van Burén county to one Moffit to secure the payment of five thousand five hundred dollars, with annual interest, according to the terms of five promis*sory notes given at the same time, the last of which was drawn payable in October, 1871. Moffit, the mortgagee, assigned the securities to one Weston, who in turn transferred them to Benjamin Proctor, the husband of Lucy Proctor. Afterwards and on September 16, 1872, Benjamin Proctor died testate, and his will was proved and allowed in- *273 the probate court of Kent county in December following. The testator appointed the said Lucy Proctor and his son Henry H. Proctor to be executors, and they were duly commissioned by the court and assumed the duties of this trust. Among the provisions of the will was one making disposition of the notes and mortgage in these terms: “First, I give and bequeath to my affectionate wife, Lucy Proctor, the mortgage I hold against Wm. S. Ide, of Nan Burén county, state of Michigan, for the sum of four thousand dollars, and after her death, the residue of said mortgage and interest thereon I give and bequeath to my son Henry H. Proctor.” On the 14th of November, 1870, the defendant Ide made a mortgage to the defendant Hiram B. Robinson on the premises covered by the first named mortgage, to secure two thousand dollars and interest, and subsequently Robinson claimed to have contracted with Ide in writing dated September 3, 1874, for the purchase of the equity of redemption.
In February, 1875, application was made to the probate court of Kent county 'for the appointment of a guardian for Lucy Proctor, on the ground of her incompetency on account of the infirmities arising from age and disease, and on the 13th of that month the court adjudged her incompetent and appointed her son John T. Proctor special guardianf and subsequently and on the second of March the court pursuant to previous proceedings again adjudged her incompetent and appointed her said son her general guardian. On the 15th of February, 1875, the present bill was filed to foreclose the old mortgage owned by Benjamin Proctor at his death and disposed of by his will as before stated. The bill averred in positive terms that the unpaid notes the mortgage was made *to secure were owned and held by the ward, Mrs. Proctor, and were due and payable to her. In a subsequent part of the bill, however, it is set out that Benjamin Proctor died testate, and by his will gave the notes and mortgage to Mrs. Proctor, that the will was proved and that the probate court ordered that the notes and mortgage should be delivered to Mrs. Proctor as a specific legacy, and that the same were delivered to her accordingly by the execu *274 tors. Robinson answered, and claimed that he was entitled to redeem, and that on or about September 8th, 1874, he tendered more than enough to satisfy the mortgage, and that the same was refused, whereby the lien was discharged. Proofs were taken, and in June, 1876, the court made a final decree. Foreclosure was allowed, but subject to a deduction from the principal sum claimed, and with a provision that intérest should cease on the 8th of September, 1874, and that Robinson and his wife should have their costs deducted. Robinson alone appealed. As no appeal has been taken on the other side, the previous decisions of this court forbid any variation of the decree in favor of complainant.
The objections of defendant Robinson to the relief' given appear to be three:
First, That the bill based the ward’s title to the mortgage ■on or traced it through an order of the probaté court setting ■off the mortgage as her property, and that no settlement of the estate was proved and no order setting off the mortgage to her shown, and that consequently there was a fatal defect of proof;
Second, That the securities were given by the will to Mrs. Proctor for life and remainder to Henry H. Proctor; that both wei% entitled, and as executors were trustees of the fund during Mrs. Proctor’s life, and hence she could not sue alone;
Third, That there was a good tender as claimed in the answer, and hence that the lien of the mortgage was discharged.
The first point is so connected with considerations *applicable to the second that no attempt will be made to pursue them separately. The defendant’s counsel are hardly, consistent in their views. In part their claim is in effect, that the statute required some order of the probate court as a preliminary to any suit to foreclose, and in part that the will fixed the right. The bequest was neither general nor demonstrative, but specific, and the right to the notes and mortgage vested at the testator’s death. The gift came from him and was not dependent on any order of dis *275 tribution or allotment by the probate court. The identical thing given was severed from the bulk of the testator’s property by the operation of the will from his death — Ashburne v. McGuire, Howe v. Earl of Dartmouth, and notes, English and American, 2 L. C. in Eq.; Willard’s Eq., ch. 7, § 6; Bac. Ab., Tit. Legacy, L, second paragraph.
The two persons named as beneficiaries were also made sole executors, and passing here any question as to their mutual rights in their sole character of specific legatees, and assuming both to have an interest in that character, and then considering the relation between them in their character of executor on the one hand and their character of specific legatee on the other, it was entirely competent for them to hold the notes and mortgage as legacy instead of assets. They could not contract with themselves or sue themselves, but they could lawfully retain. — Taylor v. Deblois, post. Their possible liability to be called on to contribute in the event of failure of assets would not prevent. — §§ 4558, 4855, 4556, G. L.; Willard’s Equity, supra. The statute supposes specific legacies may have been received by the legatees and may even have been consumed before the appearance of any necessity for contribution. The law is clear enough on the subject.
The bill alleged as a distinct fact that Mrs. Proctor was owner, and the later statement respecting an order of the probate court for the surrender of the papers to her was not material. Whether she was owner or was entitled to sue alone in no way depended on any such order, neither *did her right, as specific beneficiary for life, to hold and collect, depend upon it. It was therefore not material, and the failure to prove it was of no practical importance — Edsell v. Briggs, 20 Mich., 429; Champlin v. Parish, 3 Edw. C. R, 581; Russell v. Kinney, 1 Sandf. C. R., 34; Smedberg v. Whittlesey, 3 Id., 320; Smith v. Kay, 7 H. L., 750.
As no claim was set up that Henry made over any legatee interest of his to his mother, her right must stand on other grounds, and we must ascertain whether, as between the two, in their charater of nominal legatees of the mortgage and its *276 proceeds, she, either as being vested with the entire interest, or if not, with so much as she should consume, was entitled, with his assent in his character of executor, to hold the securities and in her own name collect them. Now, there is strong reason for contending that the gift to Mrs. Proctor was not a life interest merely, or a partial or qualified interest, but one entire and absolute, and that the expression that the “residue” after her death was given to Henry, attached to-nothing, and was destitute of force. — Jones v. Jones, 25 Mich.-, 401; Pinckney v. Pinckney, 1 Bradf. Sur. R., 269; Lyon v. Marsh, 116 Mass., 232; Baxter v. Bowyer, 19 Ohio St., 490; Perry v. Merritt, L. R., 18 Eq. Cas., 152; 9 Eng., 702; 1 Rod-field on Wills, 676, § 19. If this is the correct construction, then Henry has no interest as legatee, and was only concerned in his character of executor.
But assuming that the will gave Henry a contingent interest or a possibility of benefit, and authorized him to insist that he would be entitled to such portion of the proceeds of the mortgage' as his mother should not consume, and the provision will admit of nothing more advantageous to him, and still her right as legatee was sufficient, with his sanction in his character of executor, to justify her individual possession and a suit in her own name to collect and reduce the fund evidenced by the mortgage to possession and make it- available to carry out the purpose of the testator. Conceding *he had the right or interest mentioned, it was not one which could stand in the way of her right to subject what was given to her, to her individual possession and enjoyment.
Her right was precedent, absolute, and exclusive, whilst his was subordinate and contingent. Aside from any question growing out of his power and interest as executor, she was owner for the purpose of collecting the proceeds of the mortgage. She was unfettered by any trust and was immediate legatee of the specific property, with the right to consume the whole if desired. — Howland v. Howland, 100 Mass., 222; Fiske v. Cobb, 6 Gray, 144; Furness v. Fox, 1 Cush., 134; Dominick v. Moore, 2 Bradf. Sur. R., 201; Manning v. Craig, 3 Green *277 Ch. R., 346; Taggard v. Piper, 118 Mass., 315; Pinney v. Fancher, 3 Bradf. Sur. R., 198; Smith v. Towne, 4 Munf., 191; Williams v. Lee, 3 Atk., 223; Burnley v. Lambert, 1 Wash., 308; Alexander v. Williams, 2 Hill (S. C.), 522; Malpas v. Ackland, 3 Russ., 273; Webb v. Woolls, 13 E. L. & E., 63.
In bestowing the mortgage on his wife the testator did not design an embargo on the benefit, but intended actual bounty, something of real present utility. He meant she should have ■the fruit of the security and not merely the written paper. The words are too plain and the purpose too obvious to admit any question. The very terms of that part of the provision relating to Henry, and which confine him to-the “residue” of the principal as well as interest, not consumed at her death, convey most distinctly the testator’s sense that she should have possession of the proceeds and be entitled to consume so much of them as she might desire. The gift, then, as between the two in their character of beneficiaries, carried with íí a right to her to collect and receive. Hence, apart from any question of control pertaining to the executorship, Mrs. Proctor was entitled, as against Henry, to possess the mort•gage and collect it in her own name; and Henry appears to have acted invariably on this construction. He has sot up no claim. He has *not only acquiesced in this view by abstaining from, any hostile pretension, but has actively countenanced her separate endeavors to collect. It is the appellant Robinson who insists upon a right in Henry under the bequest which requires him to be a party in this suit to get in the fruit of the mortgage. It is not material to inquire whether this objection might be answered by Henry’s doings and his practical concurrence with his mother in carrying on the action.
But there is a further question. Complainant’s counsel are understood as assuming that Henry’s consent as executor was essential to his mother’s possession and suit as legatee, and Robinson’s counsel are understood as contending that the distinct assent of both in their representative character was indispensable and was not shown. Concerning the consent of Henry there can be no question. It was not required to be *278 evidenced by any thing express. Nothing more was necessary than circumstances from which it might be inferred.— Chesters v. Greer, 5 Humph., 26; Alston v. Munford, 1 Brock, 266; Andrews v. Hunneman, 6 Pick, 126; Willard’s Eq., 500; Shep. Touch., 455; Bac. Ah., Tit. Legacies “L,” second ¡Paragraph, et seq. And the evidence given of that kind is unanswerable. The testimony delivered by Henry is amply sufficient to show his assent. Bacon says: “This matter of assent is a perfecting act for the security of the executor, for it is the will of the testator which gives the interest to the legatee, and therefore the law does not require any exact form;” and it is compared to the attornment of a tenant on the grant of a reversion. The Touchstone says: “If the legatee have the thing devised in his own hands, perhaps the-assent of the executor may not be necessary, but the legatee may take the thing devised without his agreement. And if a legacy be given to one of the executors themselves, he may take it without any assent of his co-executor, and that before-administration also, if he will. If there be many executors, the assent of any one of them is sufficient.” — J¡S5, J¡56. *If this is sound it was not necessary certainly to go-further than to show Henry’s assent. The act of Mrs. Proctor speaks for itself. The principle underlying the doctrine of retainer is applicable. Uniting in herself the character of debtor or trustee as executrix, and the character of creditor or beneficiary, as specific legatee, and being unable to bargain with herself or to sue herself, she was entitled, so far as she was concerned, to retain.- — -Taylor v. Deblois, 4 Mason, 131, and authorities; Trail v. Bull, 21 E. L. & E., 530. The court in Massachusetts have held that where suits are brought by legatees directly against executors for general legacies-even, the fact that the debts of the estate have not been paid is no defense unless it is also shown that there is a deficiency of assets. — Kent v. Dunham, 106 Mass., 586. It is true it does not appear that the estate of Mr. Proctor was settled when this suit was begun, but the evidence is strong to show that the whole indebtedness did not exceed three hundred dollars,, and that Mrs. Proctor paid it in full. No proof to the con *279 trary was offered, nor any to show that the estate was not abundantly able to meet all claims. These matters are not mentioned on account of any special importance they possess in this cause and between these parties. They are referred to chiefly to show the technical nature of the objections made to Mrs. Proctor’s title to sue. The first and second grounds of defense are overruled.
Upon the last point, the defense of tender, but little need be said. It is a rigorous defense, and as it stands out on this record it seems to involve the sweeping claim that Mrs. Proctor ought to lose, and Mr. Robinson gain, the whole amount in controversy. Before yielding to a defense of such a nature and causing such a result, the court is bound to insist on clear proof. And such proof has not-been given. On the contrary, the whole facts lead to an opinion that there was no tender in the sense of an offer made and understood as one to cancel the lien, and tne theory of the defense required the establishment of a tender of that kind. An offer of money by a subsequent incumbrancer for the purpose of ^acquiring a prior incumbrance, or as a step preparatory to a bill to redeem, is quite different in its spirit and equitable bearings. We shall not take time to refer in detail to the facts or to specify points in this defense, which are somewhat striking. Whether Mr. Robinson had it in his mind to practice any duplicity, and supposed the circumstances would justify him, whether he meant or did not mean that Mrs. Proctor and Henry should understand that in offering the money he did do so for the purpose of paying and extinguishing the mortgage, his course was nevertheless well suited to cause them to think his purpose was different, and that instead of meaning to pay the mortgage and cancel the lien, his object was to buy the securities and hold them as assignee; and they put that construction upon his course and believed such to be his purpose. If he meant to make a fair offer of the money by way of tender in payment and with the purpose of insisting that the lien was discharged in case of refusal, he was bound to act in a straightforward way and distinctly and fairly make known his true purpose, without mystery or ambiguity, and allow *280 reasonable opportunity for intelligent action by tbe bolder of the mortgage. The defense on this branch is within the reasoning in Potts v. Plaisted, 30 Mich., 149, and is without merit.
If in decreeing the court below committed any error it was not to the prejudice of appellant.
The decree must be affirmed, with costs against him.
The other justices concurred.