DOBRANSKI *v.* LINCOLN MUTUAL CASUALTY CO.

1. INSURANCE—AUTOMOBILES—POWERS OF LIMITED AGENT—TRANSFER OF POLICY.

   Under automobile casualty insurance company's policy withholding power from agents to waive its terms and under its application for transfer of insurance in which authority to make statements or agreements contrary to its .terms was withheld from agents, agent with limited powers of soliciting insurance and collecting premiums *held,* without authority to bind company beyond terms of policy.

2. REFORMATION OF INSTRUMENTS—AUTOMOBILE INSURANCE—TRANSFER OF POLICY.

   In suit to reform automobile casualty insurance company's policy to conform to alleged transfer to cover new car, evidence *held,* insufficient to warrant decree for plaintiff in view of his knowledge of agent's limited powers and fact that parties had not agreed upon terms of policy as to new car.

3. INSURANCE—ESTOPPEL—REFORMATION OF INSTRUMENTS—PREMIUM PAYMENTS.

   Insurer *held,* to have no right to avoid estoppel as to liability under automobile casualty policy arising from acceptance and retention of premium on ground it was incident to contract in no way connected with one now asserted by plaintiff in suit for reformation, since partial payments were made by insured, transferred to it by its agent, received and retained by it on insured's premium account and insurer made no declaration to the contrary prior to accident.

4. ESTOPPEL.

   There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up.

* Continued from Vol. 274.

5. INSURANCE—ESTOPPEL—TRANSFER OF POLICY.

> Insurer *held,* not estopped to deny reformation of automobile casualty insurance policy and avoid liability under policy as to new car belonging to insured where insurer advised him it would not write policy he desired upon transfer of policy and accident occurred pending consideration of insured's counter proposition, notwithstanding it had accepted balance of premium on policy on old car after insured was notified of rejection of his application for transfer.

Appeal from Washtenaw; Sample (George W.), J. Submitted January 21, 1936. (Docket No. 79, Calendar No. 38,614.) Decided March 2, 1936. Rehearing denied April 7, 1936.

Bill by Andrew Dobranski and William Kett, by next friend, against Lincoln Mutual Casualty Company, a Michigan corporation, and Max L. Durfee for reformation of an automobile insurance policy, an injunction and other relief. Cross-bill by defendant Durfee against plaintiffs and defendant company for money decree. Decree for plaintiffs and cross-plaintiff. Defendant company appeals. Reversed.

*Carl H. Stuhrberg,* for plaintiff Dobranski.

*Edward F. Conlin* and *John W. Conlin,* for plaintiff Kett.

*Stewart A. Ricard,* for defendant company.

*Hooper & Hooper,* for defendant Durfee.

NORTH, C. J. By this bill in equity plaintiffs seek reformation of an automobile insurance policy issued by the defendant casualty company to Andrew Dobranski. Defendant and cross-plaintiff Dr. Dur-

fee has a judgment against plaintiffs arising from an automobile accident and he seeks satisfaction of his judgment under the reformed insurance policy. The relief sought was decreed in the circuit court in chancery, and the Lincoln Mutual Casualty Company has appealed. The principal question is whether Dobranski is entitled to reformation of the insurance policy. Except as otherwise indicated he will be designated hereinafter as plaintiff.

January 10, 1934, the casualty company issued a policy on plaintiff's Chevrolet coach, 1930 model. The policy included coverage of convertible collision, property damage, and public liability. The premium was payable in instalments, and the following payments were made by plaintiff to the local agent, Mr. H. T. Yakley, who in due course remitted to the casualty company: January 9, 1934, $8; February 9, 1934, $1.39; February 10, 1934, $3.11; March 24, 1934, $3.98; April 20, 1934, $3.98; May 26, 1934, $7.78. The last of the above payments was remitted to the casualty company June 4, 1934.

On March 12, 1934, plaintiff traded in his 1930 Chevrolet toward a new Chevrolet 1934 model. On the following day plaintiff notified Yakley of this transaction and requested a transfer of the insurance to the new automobile. The agent Yakley informed plaintiff the transferred insurance would become effective as soon as the request for the transfer was mailed to the insurance company. Such a request was promptly mailed by Yakley. There was some unexplained delay; but in reply to an application made in April for a transfer of plaintiff's insurance, the casualty company on April 13, 1934, wrote Yakley as follows:

"We acknowledge receipt of the application of Andy Dobranski including convertible collision cov-

erage. We beg to advise you that we are no longer writing convertible collision because of the terrific loss experienced with this class of risk. During the past year it has averaged almost two dollars of loss for every dollar of premium received and on this basis it is impossible to continue to write this coverage.

"We will be glad to issue full coverage or $25 deductible collision. We wish to advise you also that in case of this transfer will issue a new policy for one year and transfer the unearned premium from Mr. Dobranski's policy L38–733 on to the new policy.

"We are withholding the issuance of this policy, however, until you advise us regarding collision.

"Awaiting an immediate reply, we beg to remain,
"Yours very truly,"

Upon receipt of the foregoing letter Yakley presented it to Dobranski, who read and understood the refusal of the casualty company to transfer his policy to the automobile he had purchased a month before. At this time there was talk between Dobranski and Yakley. We quote from plaintiff's testimony:

"*Q.* Did he talk to you about the letter?
"*A.* Yes, sir.
"*Q.* What was that conversation?
"*A.* Well, he said they weren't writing any more convertible collisions, that they would issue me a $25 deductible collision; otherwise, full coverage.
"*Q.* Is that the way the matter was left?
"*A.* Yes, sir. * * *
(*Cross-examination*) "*Q.* And then you believed from that time on that you had a policy of insurance, didn't you?
"*A.* Yes, sir. * * *
"*Q.* Well, how about this letter that he showed you from the insurance company? * * *
"*A.* (No answer.)

"*Q.* You had a talk with him at that time, didn't you?

"*A.* Well, I was sure I was insured. * * *

"*Q.* You knew, after reading that letter, that no policy had been issued, didn't you?

"*A.* They said they would issue me one. * * * Well, just as soon as I told him I would take this full coverage insurance I said, 'It will be all right. I will take it.' And he mailed it out and I knew I was insured. * * *

"*Q.* You knew when you got that letter you would have to make another arrangement?

"*A.* Yes.

"*Q.* So he told you he would fix it up right at that time?

"*A.* Yes, sir.

"*Q.* So that would be about April 15th?

"*A.* Yes.

"*Q.* Then about April 15th, you and Mr. Yakley agreed that you would transfer the policy, is that right?

"*A.* Yes."

Concerning his conversation with Dobranski, Yakley testified:

"*A.* Yes, I advised him that we don't write retention any more, that he would have to take full coverage.

"*Q.* On the transfer?

"*A.* That's what he wanted.

"*Q.* Yes, that's what he said he wanted?

"*A.* Right. * * * The only thing we agreed upon was that we would put it through at full coverage and liability and property damage, for the balance of the term of the policy. * * *

"*Q.* Didn't you tell him also that the company claimed they wouldn't issue him anything other than a full one-year policy of insurance?

"*A.* I didn't tell him that they wouldn't; I said I would submit it to the company to see what. * * *

"*Q.* Didn't you tell Dobranski at that time that you didn't know whether the company would accept it or not, and you would try to put it across? * * *

"*A.* I did."

There is a fair inference from the record that subsequent to the casualty company's letter of April 13th Yakley again wrote the company. On April 26th the company wrote him saying:

"Replying to yours of the 24th concerning the issuance of the policy to Andy Dobranski, no policy will be issued in accordance with yours of the 24th.

"Please refer to our letter to you as of April 13th stating the conditions under which a policy will be issued."

While the matter of insurance stood as above indicated, there was on May 30, 1934, a collision between plaintiff's automobile and one owned and driven by defendant and cross-plaintiff Dr. Max L. Durfee. Suit for damages to person and property was brought by Dr. Durfee against both plaintiffs herein. The Lincoln Mutual Casualty Company refused to defend in the Durfee suit on the ground that Dobranski's policy of insurance did not cover the automobile which he purchased in 1934.

We do not find in this record proof of any application by Dobranski for insurance on his 1934 Chevrolet, which was accepted by the Lincoln Mutual Casualty Company. While there is some uncertainty from the testimony as to whether an earlier application may have been made, the only application disclosed by the record is for "convertible collision coverage" or "collision-retention." The casualty company promptly declined the application and Dobranski was promptly informed of this by the casualty company's local agent. Further, in its letter of

April 26th the company as promptly and as definitely again declined to issue a policy in accordance with Yakley's communication of April 24th. No transfer of the policy on Dobranski's 1930 car was made to the new car which he purchased in 1934; nor was a separate policy issued to cover the 1934 car.

Regardless of what conversations may have passed between Dobranski and Yakley, the latter, being an agent of limited powers, could not bind the casualty company beyond the terms of its policy. The extent of Yakley's power as an agent was to solicit insurance for the casualty company and to collect premiums for the company. The limited character of the agent's power was pointed out in the policy held by Dobranski. It is therein stated:

"No agent or representative of the company shall have power to waive any of the terms of this policy unless such waiver be by written indorsement signed by the secretary of the company and attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the assured unless so written and attached."

In the application for the transfer of his insurance which Dobranski made in April, 1934, it is provided:

"No agent has the authority to make any statements or agreements verbally or in writing contrary to the terms of this application, which shall constitute the whole of the agreement between the company and the assured."

In addition to the above, Dobranski had every reason to understand from the casualty company's letter, which he had read relative to this very matter, that Yakley was without power to transfer the insurance to plaintiff's new car except in a manner

approved by the defendant casualty company. By that letter he was plainly told what the insurer would do, *i. e.*, it would "issue a new policy for one year and transfer the unearned premium" from the policy Dobranski then held to a new policy. Instead of accepting this proposition, Dobranski through Yakley made a counter proposition but the casualty company never gave any intimation of acceptance. The fair inference from the record is that on the contrary the company by its letter of April 26th expressly advised Yakley that the counter proposition could not and would not be accepted; although there is no testimony that the contents of this letter were brought to the knowledge of Dobranski. Notwithstanding this, insofar as plaintiff's claim for reformation is based solely upon statements of Yakley or on conversations between himself and Yakley, the record is insufficient to justify granting relief.

But plaintiff asserts a right to reformation on the ground of estoppel in that after the accident occurred and with knowledge thereof the casualty company accepted from Yakley and retained a payment of $7.78 which Dobranski had made on his premium account to Yakley prior to the accident. The casualty company attempted to justify retention of instalment payments of premium made by Dobranski on the ground that he was indebted to the casualty company incident to a transaction which was in no way connected with the insurance contract now asserted by plaintiff. This the casualty company had no right to do because conclusively Dobranski made the instalment payments to Yakley as part of the premium on Dobranski's policy, and these partial payments were expressly forwarded by Yakley to the casualty company as premium payments. The

company having made no declaration to the contrary prior to the accident, such payments must be applied to Dobranski's premium account.

But estoppel does not necessarily follow. From the early part of April to the date of the accident (May 30th) negotiations were pending between the parties for some kind of transfer of Dobranski's insurance to his new car. This affords an explanation of payments of instalments by Dobranski and their retention by the casualty company. But admittedly the transfer of the insurance was not consummated. Whether the defendant casualty company is to be held estopped from denying a transfer of the insurance depends on whether it, by action or inaction, misled plaintiff into believing he was protected by the insurance, he being bound to exercise reasonable care in forming such belief.

"There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up." *Shean* v. *U. S. Fidelity & Guaranty Co.*, 263 Mich. 535.

We are confronted with these facts: The casualty company by its letter of April 13th definitely informed plaintiff that the policy on his 1930 car could not be transferred to his new automobile because the insurer was "no longer writing convertible collision" insurance; that protection on the new car could be obtained by a "new policy for one year;" and that issuance of such policy would be withheld until the insurer was advised "regarding collision" insurance. Plaintiff never informed the casualty company or Yakley, its agent, that he would accept a new policy for a year. Instead plaintiff and Yakley decided to submit a counter proposition for

coverage for the unexpired portion of the year covered by the policy on plaintiff's 1930 automobile, which would be about eight months. At the time Dobranski paid his last instalment (May 26th) he must have known the new insurance was not yet effective. He was then told by Yakley that he (Yakley) did not know whether the casualty company would write a policy for less than a year but that Yakley "would try to put it across." Four days later the accident happened. Nothing chargeable to the casualty company in any way deceived or misled Dobranski. Nothing which Dobranski had any reason to believe was within the scope of Yakley's agency was said or done by the latter which in any way misled the former. Dobranski knew that the terms of his coverage for the new car had not been agreed upon with the casualty company at the time he paid his last instalment on the premium; and he also knew Yakley could not fix the terms of the insurance, but instead the terms of the insurance had to be such as the casualty company specified. While waiting to ascertain if Yakley could "put across" an application for insurance in terms that plaintiff desired, the accident happened. Dobranski had not been misled into the belief that his insurance had been transferred to his 1934 automobile. In this important particular this case is distinguishable from *Coverdill* v. *Northern Ins. Co. of New York,* 243 Mich. 395, wherein it is said:

"An insurance company which has received the premium of the insured under circumstances leading the insured to believe he is receiving, in consideration of the payment of such premium, a valid contract of insurance, is estopped from afterwards repudiating the contract."

And likewise the instant case is distinguishable from *Rorick* v. *State Mutual Rodded Fire Ins. Co.,* 263 Mich. 169, from which we quote:

"Plaintiff was not notified he had no protection. Defendant or its agent kept plaintiff's application and kept the money. Had plaintiff's application been rejected, his money returned, and he notified, he could have obtained protection elsewhere. He had done all he could to obtain insurance from defendant company. It, so far as plaintiff is concerned, did nothing to indicate the rejection of his application or the return of his money."

Plaintiff's contention that he is entitled to reformation on the ground of estoppel is not tenable. The rights of all parties litigant are controlled by the foregoing holding. The decree heretofore entered will be vacated and one entered in this court dismissing plaintiffs' bill of complaint and the cross-bill of Max L. Durfee, with costs of both courts against them, and in favor of the Lincoln Mutual Casualty Company.

Fead, Wiest, Butzel, Bushnell, Edward M. Sharpe, Potter, and Toy, JJ., concurred.