WALTON *v.* HYMANS.

1. Chattel Mortgages—Bankruptcy—Estoppel—Rescission.
    In action for conspiracy to convert lumber on which plaintiff
    held a chattel mortgage as security for promise by mort-
    gagor to pay a sum of money in lieu of claim allowed in
    then pending bankruptcy proceeding against the promisor,
    plaintiff was not estopped from asserting mortgage lien
    and composition agreement were valid where his previous
    efforts to rescind them were unsuccessful and defendant did
    not show he had changed his position to his detriment in re-
    liance upon plaintiff's previous claim that the composition
    agreement and mortgage were void.

2. Estoppel—Reliance on Misleading Conduct.
    There can be no estoppel unless a party is misled to his preju-
    dice by the conduct of the person against whom it is set up,
    and acts are done relying upon conduct calculated to mislead,
    and one who is cognizant of all the material facts can claim
    nothing by estoppel.

3. Judgment—Res Judicata—Action Against Receiver in Bank-
    ruptcy—Chattel Mortgages.
    In action for conspiracy to convert lumber on which plaintiff
    held a chattel mortgage, plaintiff was not barred by former
    adjudication against him in action against mortgagor's re-
    ceiver in bankruptcy wherein plaintiff's rights against mort-
    gagor individually were not passed upon but only those as-
    serted against the receiver.

4. Tender—Nature of Defense—Evidence.
    Tender is a rigorous defense and the refusal thereof must be
    supported by clear proof.

5. Chattel Mortgages—Discharge of Lien by Tender.
    The lien of a chattel mortgage on property given by one who
    was later a voluntary bankrupt was not discharged where it
    was not shown that the mortgagor's tender of amount agreed
    was refused in bad faith.

6. Same—Tender and Refusal—Discharge of Lien.
    Chattel mortgagee's lien was not lost by refusal of mortgagor's

Effect of proper tender of amount of debt upon continued existence
of pledge, see Restatement, Security, § 37.

tender of money due plaintiff where such funds were tied up in accounts receivable and mortgagor merely promised to forward such money as received, hence mortgagee's action for conspiracy to convert mortgaged lumber was not barred by defense of tender.

7. ELECTION OF REMEDIES—CONVERSION OF CHATTEL MORTGAGED LUMBER—ACCOUNTING IN FEDERAL COURT.

Action to recover damages for conversion of lumber subject to plaintiff's chattel mortgage was not precluded by reason of pendency of suit in Federal court by plaintiff against defendant and his receiver in bankruptcy in which he sought an accounting and recovery of benefits received through sale of lumber as the two remedies sought were not inconsistent.

8. SAME—COMMENCEMENT OF ACTION.

The mere commencement of an action, or resorting to one remedy, is no bar to the commencement of a different form of action, provided only that the remedial rights asserted in each instance are consistent.

9. JUDGMENT—CONSPIRACY—PARTIES.

Plaintiff in action for conspiracy to convert lumber subject to his chattel mortgage, brought against an individual and a corporation alleged to be implicated, could take a judgment against the individual defendant alone.

10. SAME—CONSPIRACY—PARTIES—COMMON LAW.

Since the foundation of the action of case in the nature of conspiracy is the damage and not the conspiracy, judgment may go against one and the others be acquitted, unlike the ancient common-law writ of conspiracy where it was necessary that at least two should be joined and found guilty.

Appeal from Wayne; Toms (Robert M.), J. Submitted April 10, 1942. (Docket No. 74, Calendar No. 41,914.) Decided June 10, 1942.

Case by H. H. Walton against Herman I. Hymans, doing business under the firm name and style of Commercial Lumber Products, and Commercial Lumber Products Company, a Michigan corporation, for damages for alleged conspiracy to defraud. Judgment for plaintiff against defendant Hymans. Defendant Hymans appeals. Affirmed.

*Max Kahn,* for plaintiff.

*Adrian D. Rosen,* for defendant.

Bushnell, J.   Plaintiff, H. H. Walton, of Louisa county, Virginia, sold lumber to defendant, Herman I. Hymans, of Detroit, doing business as Commercial Lumber Products, resulting in an indebtedness to plaintiff in the sum of $24,195.48, largely evidenced by promissory notes.   On December 26, 1937, Hymans filed a petition in bankruptcy and the Equitable Trust Company of Detroit was appointed receiver.   Plaintiff filed his claim in the amount stated and it was allowed in the bankruptcy proceedings.   On May 3, 1938, after the allowance of the claim, Walton and Hymans entered into a contract whereby Walton waived his claim in bankruptcy and accepted Hymans' promise to pay 40 per cent. of the claim as part of Hymans' composition settlement with his creditors.   This agreement to pay was secured by a mortgage on a stock of approximately 1,000,000 feet of lumber located at Athens, Tennessee.

After executing the mortgage, Hymans continued to sell out of this mortgaged stock of lumber. This led Walton to seek rescission of the settlement agreement and reinstatement of his original claim in the bankruptcy court.   His efforts in this regard were unsuccessful.   The entire stock of lumber was eventually sold, and none of the proceeds thereof were paid to Walton.   In January of 1939 the bankruptcy proceedings were closed and the assets of Hymans' business were returned to him.

In November of 1939 Walton began the present action against Hymans individually, doing business as Commercial Lumber Products, and against Commercial Lumber Products Company, a Michigan

corporation. The case did not come to trial until October of 1941, prior to which an amended declaration was filed by Walton. While this case was pending, Walton instituted a trespass action against Equitable Trust Company in the circuit court, based on the claimed conversion by it of the proceeds of the mortgaged lumber. The trust company filed a motion to dismiss, which was granted, and in *Walton* v. *Equitable Trust Co.*, 296 Mich. 630, we held that the debtor's property, wherever located, was subject to the exclusive jurisdiction of the bankruptcy court, that the receiver was not bound by the mortgage agreement, and affirmed the order of dismissal.

Walton's petition to have the composition agreement cancelled and his original claim reinstated was denied by the referee in bankruptcy and a review of that holding was denied by the district court. Walton then took an appeal to the circuit court of appeals, which he discontinued prior to commencement of the instant action. While the matter now under consideration was pending, Walton filed a second petition in the Federal court in which he set up the decision of this court in *Walton* v. *Equitable Trust Co.*, *supra*, and sought an accounting by the receiver and by Hymans for the proceeds of the mortgaged lumber. This petition remained pending until dismissed by the district judge shortly after the present case was tried.

The present action is one of trespass on the case and alleges a conspiracy between Hymans and the Commercial Lumber Products Company, a Michigan corporation, to convert the mortgaged property. When the matter was heard in the circuit court almost all the facts were stipulated, the record of the proceedings before the referee in bankruptcy was received in evidence, and some testi-

mony was taken. The trial judge stated the grounds on which he arrived at his conclusion as follows:

"I think a definite proprietary right is created by the mortgage which cannot be modified by one party without the consent of the other. Certain definite interests are created by contract, and I don't think they can be sloughed off, modified, or shuffled about for the convenience of one of the parties alone, and without the consent of the other.

"And viewed realistically and with sort of a bird's-eye perspective, I see this picture: The plaintiff here had a claim against the defendant in the sum of about $25,000 which he could have proved in the bankruptcy proceedings under section 74, and as was the case with other creditors, he could have received about 40 per cent. of the claim. He chose another method which was mutually adopted by the defendant, and the plaintiff, of relinquishing any claim in the bankruptcy proceedings, and instead, of accepting certain well-defined contract rights which arose by agreement between Walton and Hymans. They were specifically created by a written instrument; they were definite, they were concrete, not ambiguous, and the two parties agreed that those rights should stand in lieu of the rights which Walton had as a claimant.

"It now appears that by some sort of obfuscation those rights have disappeared—I mean the security which Walton plainly was given in the agreement has disappeared, and there is a constant diminution of the bundle of rights which the plaintiff started out with until he finds himself left with the naked right to sue in assumpsit with the chance of collection which may or may not be good, upon a claim which started out to be a secured obligation, with ample security for its fulfillment. That is the factual residual picture. I don't see that there is anything wrong about that. That sort of thing

could happen, and it could happen without any-
one's being guilty of a wrong, and I realize that I
am not a court of abstract justice, I am not even a
chancellor at the moment.   If that situation arose
through the operation of law and the conduct of
the parties, no matter how shocking it might be, it
might be recognized and must be dealt with—an
actual situation lawfully arrived at.   I don't think
it comes in that category, however.   I think it be-
comes a situation which results from a wrong and
that wrong is the diversion and the appropriation
of a security solemnly pledged to Walton's debt,
to other purposes.''

The court entered a judgment of no cause of ac-
tion as to defendant Commercial Lumber Products
Company, a Michigan corporation, and a judg-
ment against defendant Hymans in the sum of
$11,358.41, that being the amount due on the mort-
gage.

The parties agree that the questions involved on
appeal are as follows:

''1.   Is the plaintiff estopped to claim that the
mortgage lien is valid?

''2.   Had the plaintiff's right to sue in this court
already been, adjudicated against him?

''3.   Had the plaintiff's mortgage lien been lost
by tender and refusal?

''4.   Is the present action barred by another suit
pending in; the United States district court for the
eastern district of Michigan, between the same
parties and involving the same subject matter?

''5.   Does a conspiracy require the concert of at
least two persons?''

Much of Hymans' argument on estoppel is in
reality an attempt to invoke the doctrine of election
between inconsistent remedies.   The weakness of
this argument is that, although Walton attempted

to rescind the composition agreement, his efforts in that regard were unsuccessful, and therefore he is not now precluded from asserting that the composition agreement and the mortgage are valid. See *Kruk* v. *Railway Co.*, 249 Mich. 685, for discussion of the rule of estoppel by election. In that case the court said:

"In order to work an estoppel, the position assumed in the former trial must have been successfully maintained."

See, also, *Bowerman* v. *Detroit Free Press*, 287 Mich. 443 (120 A. L. R. 1230), where this same principle was applied.

Walton is not estopped from claiming that his mortgage lien is valid because Hymans does not show that he has changed his position to his detriment in reliance upon Walton's previous claim that the composition agreement and mortgage were void. On the contrary, Hymans contended at all times that the agreement and mortgage were valid.

"There can be no estoppel unless a party is misled to his prejudice by the one against whom it is set up. *Shean* v. *U. S. Fidelity & Guaranty Co.*, 263 Mich. 535." *Dobranski* v. *Lincoln Mutual Casualty Co.*, 275 Mich. 1, 9.

As was said in the *Cudahy Brothers Co.* v. *West Michigan Dock & Market Corp.*, 285 Mich. 18, in discussing the distinction between ratification and estoppel:

"One who is cognizant of all the material facts can claim nothing by estoppel.

" 'There can be no estoppel unless a party is misled to his prejudice by the conduct of the person against whom it is set up, and acts are done rely-

ing upon conduct calculated to mislead.' *Thirlby* v. *Rainbow,* 93 Mich. 164, 170.

"To the same effect, see *Plumb* v. *City of Grand Rapids,* 81 Mich. 381; *Ladd* v. *Brown,* 94 Mich. 136; *Murray* v. *Rugg,* 116 Mich. 519; and *Tower* v. *Township of Somerset,* 143 Mich. 195."

Walton's right to sue Hymans was not adjudicated against him in *Walton* v. *Equitable Trust Co., supra,* because in that case we did not pass upon any of plaintiff's rights against Hymans individually but only those which he asserted against Equitable Trust Company. Nor were they passed upon by the referee in bankruptcy. The record there shows that the referee said:

"I am not passing on the Walton claim. The only question is the amount of deposit and the waiver."

In the bankruptcy proceedings the composition agreement and the mortgage were held to be valid. Walton's rights under the mortgage have not been lost by tender and refusal.

The referee in bankruptcy stated in his findings of fact:

"I find that the debtor has been and is ready, willing and able to perform the contract of May 3, 1938, that he has tendered performance of that contract, and that such tender was refused by Walton."

This is not a finding of an actual tender of the amount of the debt, such as is necessary to discharge a lien. Tender is a rigorous defense and, as pointed out in *Proctor* v. *Robinson,* 35 Mich. 284, "Before yielding to a defense of such a nature and causing such a result the court is bound to insist on clear proof."

Speaking of the defendant in that case the court said:

"If he meant to make a fair offer of the money by way of tender in payment and with the purpose of insisting that the lien was discharged in case of refusal, he was bound to act in a straightforward way and distinctly and fairly make known his true purpose, without mystery or ambiguity, and allow reasonable opportunity for intelligent action by the holder of the mortgage."

See, also, many authorities annotated in 93 A. L. R., beginning at page 12; also *Schmittdiel* v. *Moore,* 120 Mich. 199. Furthermore, in the absence of a showing that the tender was refused in bad faith, the lien was not discharged. *Hayward* v. *Chase,* 181 Mich. 614.

The record in the bankruptcy proceedings which was received in evidence by the circuit judge does not show facts justifying the conclusion that Hymans made such tender as is required by the rule in *Proctor* v. *Robinson, supra.* On the contrary, it shows that the money due Walton was tied up in accounts receivable and Hymans merely promised to forward this money as it was received. The term "tender" is often used loosely as being synonymous with the term "offer." This appears to be the sense in which the term was used by the referee.

Walton's suit against the Equitable Trust Company, as receiver, and Hymans for an accounting, which was pending in the Federal court and not dismissed until after the present case was tried, did not bar Walton's action in the circuit court. Walton was not pursuing an inconsistent remedy but rather seeking alternative relief, and these two actions were not inconsistent. In the present action Walton seeks damages by reason of Hymans' con-

version of the lumber, and, in the then-pending action, sought an accounting and recovery of benefits received through the sale of the lumber.

The mere commencing of an action, or resorting to one remedy, is no bar to the commencing of a different form of action, provided only that the remedial rights asserted in each instance are consistent.'' *Humiston, Keeling & Co.* v. *Bridgman,* 195 Mich. 82, 87.

Although Walton alleged a conspiracy between Hymans, doing business as Commercial Lumber Products, and Commercial Lumber Products Company, a Michigan corporation, he nevertheless can take a judgment against Hymans.

In *Auto Workers' Temple Ass'n* v. *Janson,* 227 Mich. 430, the court adopted the rule stated in 12 C. J. p. 646, as follows:

'' 'At the common law on the writ of conspiracy which has since become obsolete, it was necessary that at least two should be joined and found guilty. One could not be found guilty and the other acquitted. *However, in an action on the case in the nature of conspiracy, which has superseded the ancient writ of conspiracy, although several are sued, the general rule is that judgment may go against one, although the others are acquitted, as the foundation of the action is the damage and not the conspiracy.' ''* 12 C. J. p. 646.

The judgment is affirmed, with costs to appellee.

CHANDLER, C. J., and BOYLES, NORTH, STARR, BUTZEL, and SHARPE, JJ., concurred. WIEST, J., took no part in this decision.