*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

DAVID JOSEPH ROHM,

        Defendant-Appellant.

FOR PUBLICATION

November 14, 2025
9:14 AM
No. 369338
Otsego Circuit Court
LC No. 2023-006494-FC

Before: GADOLA, C.J., and BOONSTRA and SWARTZLE, JJ.

SWARTZLE, J.

In a court of law, no witness has a "right to be believed." A witness has the duty to testify truthfully to the best of his or her ability, and the factfinder (whether judge or jury) has the corresponding duty to assess the credibility of that witness and evaluate the weight, if any, to give to that witness's testimony. A free-standing notion of the "right to be believed" is antithetical to the rule of law, as it would require Lady Justice to slip the blind from one eye and tilt the scale of justice in favor of one witness to the detriment of all others.

It was wrong for the prosecutor to assert such a right during closing in defendant's criminal trial. With that said, the evidence of defendant's guilt was overwhelming, and the trial court correctly instructed the jury with respect to the jury's duty to evaluate witness credibility and the weight of testimony. Given this, the prosecutor's misstatement of law did not cause reversible error. Finding no other errors warranting reversal, we affirm.

## I. BACKGROUND

Defendant was charged with eight counts of first-degree criminal sexual conduct and two counts of attempted first-degree criminal sexual conduct (CSC-I). MCL 750.520b(2)(b); MCL 750.92. The charges stemmed from accusations that defendant sexually assaulted his biological daughter, NR, when she was about six years old. NR lived with defendant and her mother until she moved in with her grandmother. After NR moved in with her grandmother, the grandmother reported to police that she had concerns that something had happened to NR. NR had an interview and medical examination with the Child Advocacy Center, when she disclosed that defendant had touched her genitals with his hands and penis.

At the outset of the proceedings during jury selection, both counsel used the term "victim" when questioning prospective jurors. Acknowledging that the word "victim" had been used multiple times during voir dire, the trial court made clear to prospective jurors that when the word "victim" was used, "we all know it's an alleged victim" because of the prosecutor's unproven allegations and defendant's presumption of innocence. (The only other times the prosecutor used the word "victim" to refer to NR in the presence of the jury was once during direct examination of a police officer and then during closing argument.)

At trial, NR testified that defendant would show her pornography, that they were naked together, and that he orally and anally penetrated her and attempted to vaginally penetrate her. NR's mother testified that she had found "daddy-daughter" pornography on defendant's phone, and NR's grandmother and teachers testified about concerning behaviors NR had exhibited.

A police officer testified about an interview that was conducted with defendant before he was arrested, and a video recording of the interview was shown to the jury and admitted into evidence. The officer testified that during the interview, defendant's answers would change; sometimes he would say that a sexual assault never happened, while at other times he would say that a sexual assault could have happened. During the interview, defendant told the officer that NR may have seen porn when she walked in on defendant while he was naked in his, and that it was possible that he and NR were both naked in the same room. Further, he stated that NR used the bathroom while he was in the shower, and that he also saw NR masturbating while she was taking a bath.

At one point during the interview, defendant admitted to the officer that there was a possibility that something sexual had happened. Specifically, the officer asked if there was a time when NR did something to defendant, and defendant told NR that it was not appropriate. In response, defendant said, "I want to say that I have . . . Anytime that it wasn't appropriate. It was just like a no, no. What are you doing? No, we can't do that [NR]." He said it was not "out of the realm of possibility" that NR was curious and did something sexual to him while he was asleep or passed out. Then the police officer followed up, "[I]f she did that, did you tell her no after she did it?" Defendant responded with the following: "We [defendant and NR's mother] did talk to her about it . . . Should we talk to her? No, just see if she does it again . . . We did tell her, 'you know you don't do that, your parts are your parts, my parts are my parts.' But we never noticed anything like it happen again." To clarify, defendant then said that he remembered a time when NR was touching him and her hand placement was inappropriate. When discussing anal penetration, defendant said that such penetration was "definitely a no," but that the other ones "hypothetically" could have happened and that he considered the possibility of NR putting his penis in her mouth differently than the possibility of anal penetration.

The doctor who first examined NR at the advocacy center also testified. Before her testimony, defense counsel had concerns that the doctor was going to offer opinion testimony without being qualified as an expert. When the prosecutor moved to recognize the doctor as an expert witness in pediatrics, defense counsel objected to her testimony because the prosecutor did not comply with defense counsel's discovery request to identify expert witnesses under MCR 6.201. The prosecutor had listed the doctor as a witness and provided the doctor's medical report to defense counsel, but the prosecutor had not specifically listed her as an expert witness and did not provide defense counsel with her curriculum vitae (CV). The medical report that the prosecutor

provided to defense counsel stated that NR disclosed penetration, and NR had a normal exam "which is consistent with that disclosure."

The prosecutor argued that he did not think that he needed to list her as an expert because it was common practice among lawyers to know that when a party provides a doctor's medical report, the doctor will be called as an expert. Defense counsel had the report and anticipated that the doctor would testify about the examination and the lack of physical injuries, but counsel argued that he did not know that the doctor would testify that it was common in sexual assault cases not to see injuries.

Although the prosecutor had not complied with the discovery rule, the trial court concluded that defendant had not been prejudiced. Given this, the trial court overruled defense counsel's objection and allowed the doctor's testimony. While discussing NR's exam, the doctor testified that it was a normal exam, that a normal exam is expected because tissue heals quickly or the tissue was not injured, and that "depending on the piece of literature you read most numbers accept well into the mid to high 90 percent of children who have confirmed penetration, even repeated penetration, will have normal genital exams."

After the close of proofs, the prosecutor began his closing argument by listing various "rights" that defendant had, including the right to a jury trial, the right to an attorney, and the right to remain silent. The prosecutor then proceeded to list rights that victims have, such as the right to be notified of and be present at court proceedings, and the right to speak at sentencing. The prosecutor finished the point by stating, "And most important of all these rights is that when someone comes forward and has the courage and the bravery to report something as awful as was done to [NR] as in this case, they have the right to be believed." Continuing, he mentioned "[h]ow awful" it was for NR to testify in the courtroom and that "[k]ids don't make up stuff like this." Defense counsel did not object.

When describing defendant's conduct, the prosecutor characterized defendant's denials during the police interview as "weak" and not "complete [or] adamant." The prosecutor also argued that defendant admitted that NR could have seen porn, that there were times when he was alone with her, and that he was aware that she was acting out sexually. The prosecutor then argued that because of these admissions and the other evidence, defendant "essentially" or "tacitly" admitted that oral sex had or could have happened.

During his argument, a PowerPoint presentation was shown to the jury that summarized the prosecutor's points, including statements such as "90%+ actual Vs of sexual intercourse have normal physical exams"; "And the Defendant's interview — where he essentially Admits most of it"; "In shower naked w her"; "Admits the oral sex happened. Says it many times."; "Less willing to admit the anal, but never a complete denial"; "Only real denial (anal) is weak and also an admission —' The other I can see (oral)." The prosecutor summed up in the PowerPoint presentation, "This is about as close as you'll ever get to an out and out full confession on a child molestation cases. Imagine how embarrassing it would be to admit something so depraved. Of your own 6 yr old daughter . . . Only reasonable verdict based on Evidence: GUILTY!" (Note: The somewhat idiosyncratic grammar is in the original PowerPoint presentation.)

After closing, the trial court instructed the jury. Among other instructions, the trial court explained, "It is my duty to instruct you on the law. You must take the law as I give it to you, so if a lawyer said something different about the law, follow, instead, what I say." The court went on, "The lawyers' statements and their arguments are not evidence." With respect to witnesses, the trial court explained, "You must decide which witnesses you believe and how important you think their testimony is. You do not have to accept or reject everything a witness said. Instead, you're free to believe all, none, or part of any witness's testimony." The trial court then went into detail on some of the things jurors could consider when evaluating the evidence, including witness testimony. The jury was then excused to begin their deliberations.

A little over 90 minutes later, the jury returned a verdict of guilty on all eight counts of CSC-I and two counts of attempted CSC-I. The trial court sentenced defendant to 25 to 50 years on the CSC-I convictions and 40 months to 5 years on the attempted CSC-I convictions, with the latter sentences to run consecutive to two of the former sentences.

Defendant now appeals his convictions.

## II. ANALYSIS

## A. EXPERT TESTIMONY

Defendant first argues on appeal that the trial court erred by allowing the doctor's expert testimony, even though the prosecutor did not list her as an expert on the witness list, never provided defense counsel with her CV, and never provided defense counsel with a summary of her testimony. We review this preserved evidentiary claim for an abuse of discretion. *People v McGhee*, 268 Mich App 600, 636; 709 NW2d 595 (2005); MCR 6.201(J). The trial court does not abuse its discretion if its decision is "within the range of reasonable and principled outcomes." *People v Young*, 276 Mich App 446, 448; 740 NW2d 347 (2007). Even if there was an evidentiary error, such error does not merit reversal unless it appears "more probable than not that the error was outcome determinative." *People v Lukity*, 460 Mich 484, 495-496; 596 NW2d 607 (1999).

MCR 6.201(A) requires the prosecutor, upon defendant's request, to provide (1) "the names and addresses of all lay and expert witnesses whom the party may call at trial," (2) the CV of expert witnesses, and (3) "either a report by the expert or a written description of the substance of the proposed testimony of the expert, the expert's opinion, and the underlying basis of that opinion." Here, defendant is correct that the prosecutor violated this rule. Although the prosecutor did provide defendant with the doctor's report, the prosecutor did not provide the doctor's CV or designate the doctor as an expert on the witness list.

When deciding how to remedy this type of discovery violation, a trial court "must balance the interests of the courts, the public, and the parties in light of all the relevant circumstances, including the reasons for noncompliance." *People v Banks*, 249 Mich App 247, 252; 642 NW2d 351 (2002). Preclusion of relevant evidence is an extraordinary option for a discovery violation, and the prosecutor's mere negligence does not warrant it. See *People v Callon*, 256 Mich App 312, 328; 662 NW2d 501 (2003).

When ruling on defendant's objection, the trial court considered what defendant knew and should have known in relation to the doctor's testimony. Defendant knew the doctor was testifying, knew that she was testifying about the report, and knew that the report included an opinion that the lack of physical evidence of abuse was consistent with NR's disclosure. Given this, defendant should have known that the prosecutor was going to elicit testimony from the doctor about the normal exam results, considering that the lack of evidence of abuse was defendant's main argument in his opening statement. Thus, the trial court did not abuse its discretion in finding that defendant was not prejudiced by the prosecutor's error.

## B. PROSECUTORIAL MISCONDUCT

Defendant next argues that he was denied a fair trial because the prosecutor made inappropriate comments during closing arguments. Because defendant did not object and request a curative instruction at trial, we review these claims for plain error affecting defendant's substantial rights. *People v Solloway*, 316 Mich App 174, 201-202; 891 NW2d 255 (2016). "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "The third requirement generally requires a showing of prejudice, i.e., that the error affected the outcome of the lower court proceedings." *Id.* We will reverse if the error resulted in the conviction of an innocent defendant, or if the error seriously affected the proceedings and a curative instruction could not have alleviated any prejudicial effect from the error. *People v Unger*, 278 Mich App 210, 235; 749 NW2d 272 (2008).

Defendant first argues that the prosecutor improperly stated that defendant never denied the allegations and that defendant admitted guilt. During closing arguments, the prosecutor is allowed to argue reasonable inferences from evidence in the record and is not confined to argue in the "blandest possible terms." *People v Aldrich*, 246 Mich App 101, 112; 631 NW2d 67 (2001). And that is what the prosecutor did here. The prosecutor acknowledged that defendant made denials during the police interview, but characterized those denials as weak. The prosecutor then argued that defendant admitted to certain aspects of the case, like NR seeing porn and the possibility of NR putting her mouth on defendant's penis, and argued that the jury could infer from these statements a tacit admission of oral sex. These were fair arguments for closing based on the evidence and reasonable inferences. Moreover, and importantly, the jurors watched the video of the interview, and they could decide for themselves whether defendant made any admissions, tacit or otherwise.

Defendant also claims that the prosecutor's use of the term "victim" to refer to NR in his closing arguments was improper. Our case law makes clear that the use of the term "victim" is not deemed to be reversible error when the "prosecution's use of that term could not have suggested anything to the jury of which it was not already aware." *People v Wisniewski*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 361978); slip op at 18. The jury was aware, based on the trial court's comments during voir dire, that when parties used the term "victim," they were referring to the complainant as the alleged victim. The jury was also aware that the lawyers' arguments were not evidence, per the trial court's instructions. Thus, under our case law, there was no reversible error with respect to the use of the term "victim." See *People v Aikens*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 368187); slip op at 3.

Lastly with respect to his prosecutorial-misconduct claim, defendant argues that several of the prosecutor's comments about NR amounted to witness vouching that impermissibly undermined his presumption of innocence. The prosecutor can argue that a witness should be believed but cannot appeal to the jury to sympathize with the witness. *People v Wise*, 134 Mich App 82, 104; 351 NW2d 255 (1984).

During closing, the prosecutor asserted that it was awful for NR to have to testify and that children like NR would not fabricate allegations of sexual abuse. Such comments are better viewed as attempts to bolster credibility based on a juror's commonsense judgment, as opposed to impermissible vouching based on a prosecutor's special knowledge. These comments did not invade or otherwise undermine the province of the jury as the final judge of the credibility and weight of NR's testimony. *People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998); see also *People v Zitka*, 335 Mich App 324, 348; 966 NW2d 786 (2020) (observing that the jury is presumed to have followed the trial court's instructions). Similarly, these comments were not so shocking as to inflame the jury and thereby prejudice defendant. See *People v Watson*, 245 Mich App 572, 591; 629 NW2d 411 (2001).

With that said, the prosecutor did cross the line when he stated that victims, like NR, "have the right to be believed." In a court of law, no witness has a free-standing "right to be believed" by the finder of fact. If such a right existed, then it would be incumbent on the jury to accept such testimony, both in terms of credibility and weight. But this would go directly against the oft-recognized principle that "a jury is free to believe or disbelieve, in whole or in part, any of the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999); see also *People v Brown*, 42 Mich App 608, 615; 202 NW2d 493 (1972).

The present case is not the lone instance where this purported right has been asserted during a criminal trial. Prosecutors across the country have asserted such a right, and those assertions have been roundly rejected by both federal and state courts. See, e.g., *Durmer v Rogers*, unpublished opinion of the United States District Court for the District of New Jersey, issued Oct. 13, 2006 (Docket No. 05-62), 2006 WL 2938831 (explaining that it was improper for the prosecutor to assert that the minor complainant had " 'the right to be believed' "); *Mason v State*, 658 A2d 994, 998 (Del, 1995) (concluding that a complainant witness had the right to be heard, but had no right to be believed); *State v Owens*, unpublished opinion of the Tennessee Criminal Court of Appeals, issued Apr. 12, 2007 (Docket No. M2005-02571) (concluding that it was error for the prosecutor to assert that "children have an absolute right to be believed"). The state appellate court, quoted in *Durmer*, summarized the matter well:

> We agree with defendant that such a remark was improper. [The minor complainant, C.B.,] did not have a "right" to have the jury accept his testimony as credible. He had a duty to testify truthfully to the jury about his experiences; the jury had a corresponding duty to assess and weigh that testimony in light of all the other evidence that was presented and in light of their own assessment of C.B.'s manner and demeanor. The jury was entirely free to reject C.B.'s testimony if the jury determined it was not credible. [*Durmer*, 2006 WL 2938831, at *11, quoting *State v Durmer*, unpublished opinion of the Superior Court of New Jersey, Appellate Division, issued Apr. 5, 2000 (Docket No. A–5628–97T4).]

Simply put, no witness begins testifying with a built-in advantage under the law.

Nor can the prosecutor's statement here be explained away as merely rhetorical flare. Just before asserting that a victim had the right to be believed, the prosecutor listed several actual legal rights that a victim does enjoy, including the right to attend court proceedings and give a statement at sentencing. By grouping the asserted "right to be believed" together with several actual rights, the prosecutor created the impression that each of them stood on equally sound legal footing. This was error, and it was plain. To its credit, the Attorney General's office, representing the people on appeal, has conceded the error.

With that said, the prosecutor's plain error does not warrant reversal. There was overwhelming evidence of defendant's guilt, including the testimony of NR, her mother, her grandmother, her teachers, the doctor, and police officers. The jury watched the video of defendant's interview with police, during which he made arguably damning statements. In addition, and critically, the trial court properly instructed the jury, explaining that the trial court, not the lawyers, sets forth the law for the jury to follow. The jury was instructed that defendant is presumed innocent, that closing statements are not evidence, and that the jurors, as the finders of fact, were to decide whether to, and to what extent, credit and weigh the testimony of each witness. These instructions cured any prejudicial effects that the prosecutor's comments may have had. *Unger*, 278 Mich App at 235.

## C. INEFFECTIVE ASSISTANCE OF COUNSEL

In a Standard 4 brief,[1] defendant argues that he received ineffective assistance of counsel by his trial counsel failing to object to the prosecutor's closing argument. These arguments mirror those of the claims of prosecutorial misconduct made by his appellate counsel. Because the trial court did not hold a hearing on defendant's claims of ineffective assistance of counsel, our review at this juncture is limited to errors apparent on the record. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007).

Defendant bears a heavy burden to show that his trial counsel made errors so serious that defendant was, in effect, deprived of his right to counsel guaranteed by the Sixth Amendment to the U.S. Constitution and Article 1, § 20 of our Constitution of 1963; similarly, defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984); *People v Rockey*, 237 Mich App 74, 76-77; 601 NW2d 887 (1999). For ineffective assistance of counsel, defendant must show (1) that his counsel's performance was deficient, and (2) that deficient performance prejudiced defendant. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *Jordan*, 275 Mich

---

[1] Criminal defendants generally have a constitutional right to have an appeal and a constitutional right to the effective assistance of appellate counsel. *People v Craig*, 342 Mich App 217, 226; 994 NW2d 792 (2022). If a defendant insists that a claim be raised on appeal against the advice of his appellate counsel, the defendant can supplement his counsel's arguments by filing a "Standard 4" brief in propria persona. *People v Good*, 346 Mich App 275, 283; 12 NW3d 79 (2023).

App at 667. For performance to be deemed prejudicial, it must be reasonably probable that, but for counsel's error, the result of the proceeding would have been different. *Id.*

As already explained, most of the prosecutor's statements made during closing were proper. The prosecutor did cross the line, however, when he asserted that NR had the right to be believed. Arguably, it could have been sound trial strategy for defense counsel not to object and thereby avoid drawing undue attention to the prosecutor's statement or generate more sympathy for NR. But, even if it was deficient performance not to object, defendant cannot show that he was prejudiced by that comment. Given the totality of the evidence and jury instructions, it is not reasonably probable that but for counsel's failure to object, the result of the trial would have been different. Therefore, defendant's argument for ineffective assistance fails on this point.

Defendant in his Standard 4 brief also lists, in the form of argument headings, other purported ways that defense counsel provided ineffective assistance. A mere list of alleged errors, without any factual or legal development, is not sufficient to raise arguments for appellate review. *Wilson v Taylor*, 457 Mich 232, 243; 577 NW2d 100 (1998). Defendant's claims of ineffective assistance of counsel are without merit.

### III. CONCLUSION

Defendant raised several claims of error against the trial court, the prosecutor, and his own defense counsel. While most of his claims are without merit, the prosecutor did err in asserting that NR had "the right to be believed." As explained, however, this was not reversible error.

Affirmed.

/s/ Brock A. Swartzle
/s/ Michael F. Gadola
/s/ Mark T. Boonstra